[S. F. No. 209.   In Bank.—March 24, 1896.]

W. R. DAILEY ET AL., PETITIONERS, *v.* SUPERIOR COURT OF. CITY AND COUNTY OF SAN FRANCISCO, D. J. MURPHY, JUDGE.

CONSTITUTIONAL LAW—LIBERTY OF SPEECH—THEATRICAL REPRESENTATION OF FACTS OF CRIMINAL CASE—JURISDICTION—CERTIORARI.—An order of the superior court forbidding the representation upon the theatrical stage of the facts of a criminal case, pending the trial of such case, is an infringement of section 9 of article I of the constitution of this state, which protects the right of the citizen to freely speak, write, and publish his sentiments, without censorship over him, he being responsible only at the hands of the law for an abuse of that right; and such order, being in excess of the jurisdiction of the superior court, will be annulled upon *certiorari.*

ID.—INJUNCTION—EQUITY—JURISDICTION—RESTRAINT OF LIBEL.—The jurisdiction of equity to restrain a publication rests only upon the protection of rights of property in that which is sought to be published; and equity has no jurisdiction to restrain any publication of a literary work upon the mere ground that it is of a libelous character, and tends to the degradation or injury of the reputation or business of the plaintiff.

ID.—CONTEMPT—PRACTICE.—It is not proper practice for a court to command a person not to commit a contempt of court; though the court has ample power to protect itself in the administration of justice after a contempt has been committed.

CERTIORARI to review an order of the Superior Court of the City and County of San Francisco forbidding the public performance of a theatrical play. D. J. MURPHY, Judge.

The facts are stated in the opinion of the court.

*Carroll Cook*, for Petitioners.

The order complained of was an attempt to interfere with the right guaranteed by the constitution to a citizen, to freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right, which right cannot be restrained in advance. (Const., art. I, secs. 1, 9, 13, 14; *Ex parte Barry*, 85 Cal. 607; 20 Am. St. Rep. 248; Code Civ. Proc., sec. 1209; *Ex parte Hollis*, 59 Cal. 413; *People* v. *Turner*, 1 Cal. 151; 52 Am. Dec. 295; *Ex parte Shortridge*, 99 Cal. 526; 37 Am. St. Rep. 578; Cooley's Constitutional Limitations, 1st ed., 417; 3d ed., 488; *Batchelder* v. *Moore,* 42 Cal. 414; Pen. Code, sec. 6; *Galland* v. *Galland*, 44 Cal. 475; 13 Am. Rep. 167; *Ex parte Kearny*, 55 Cal. 224; *Brandreth* v. *Lance*, 8 Paige, 24; 34 Am. Dec. 368; *Shook* v. *Daly*, 49 How. Pr. 368; *Southey* v. *Sherwood*, 2 Meriv. 438; *Seeley* v. *Fisher*, 11 Sim. 582; *Hine* v. *Dode*, 2 Camp. 27; *Clark* v. *Freeman*, 11 Beav. 112; *Martenetti* v. *Maguire*, 1 Deady, 216.)

*A. W. Thompson, William S. Barnes, District Attorney, John H. Dickinson, Eugene N. Deuprey*, and *Edgar D. Peixotto, Assistant District Attorney*, for Respondents.

The court had power to prevent the contemplated act of petitioner, as it would have been an interference with the administration of justice, and deprived the defendant of a fair and impartial trial; and its power was not limited to punishment for the act complained of. (*Regina* v. *Onslow*, 12 Cox C. C. 358; *Tenney's case*, 23 N. H. 162; 4 Blackstone's Commentaries, 286; *Yates* v. *Lansing*, 9 Johns. 416; 6 Am. Dec. 290; *State* v. *King*, 17 South. Rep. 288; *Watson* v. *Williams*, 36 Miss. 331; *State* v. *Judge, etc.*, 45 La. Ann. 1258; 40 Am. St. Rep. 282; *Sturoc's case*, 48 N. H. 428; 97 Am. Dec. 626; *State* v. *Frew*, 24 W. Va. 416; 49 Am. Rep. 257; *People* v. *Court of Sessions*, 31 N. Y. Supp. 373; *In re Cooper*, 32 Vt. 257; *Middlebrook* v. *State*, 43 Conn. 257; 21 Am. Rep. 650; *Ex parte Adams*, 25 Miss. 883; 59 Am. Dec. 234; *Cooper*

v. *People*, 13 Col. 337; *Arnold* v. *Commonwealth*, 80 Ky. 300; 44 Am. Rep. 480.)

GAROUTTE, J.—One Durrant was upon trial in the city of San Francisco, charged with murder, and, while the jury was being impaneled, the petitioner, Dailey, advertised by posters and newspapers that he would produce in a certain theater in said city of San Francisco a play entitled "The Crime of a Century." Thereupon, Durrant presented an affidavit to the court wherein his trial was pending, setting forth that said play was based upon the facts of his case, as established at the preliminary examination and the coroner's inquest, and that the production of said play during the progress of his trial would be an interference with the administration of justice, and deprive him of a fair and impartial trial. The affidavit was full and complete as to details, but we see no purpose to be subserved by a further statement of the allegations therein set out. Upon the presentation of the affidavit, the superior court made an order directing this petitioner, Dailey, to desist and refrain from giving any public performance of said play, and further ordered him to cease from advertising the same. The present proceeding is one of *certiorari* to review the action of the court in making the aforesaid order, it being insisted that the trial court thereby exceeded its power and jurisdiction. The record before us incidentally develops that this order was subsequently served upon petitioner, that he defied the power of the court in making it, produced the play, and was adjudged guilty of contempt; but with those matters we are not now concerned.

The production of a tragedy or comedy upon the theatrical stage is a publication to the world by word of mouth of the text of the author, and, as to the question here presented for our consideration, it is immaterial whether the words be publicly spoken from the stage or upon the hustings, or go out to the world through the channels of the printing-press. By the constitu-

tional provision we are about to invoke a citizen may
speak, write, or publish his sentiments with equal free-
dom, and this case now stands before us exactly as
though one of the daily journals was threatening to
publish its sentiments pertaining to the conduct of a
criminal trial then pending, and the court where such
trial was pending and in progress, believing such publi-
cation would interfere with the due administration of
justice, had issued an order restraining and prohibiting
the threatened action of the paper.

We are entirely clear that the court had no jurisdic-
tion to make the order which forms the basis of this
proceeding, for such order was an attempted infringe-
ment upon rights guaranteed to every citizen by section
9, article I, of the constitution of this state. That sec-
tion provides: "Every citizen may freely speak, write,
and publish his sentiments on all subjects, being respon-
sible for the abuse of that right; and no law shall be
passed to restrain or abridge the liberty of speech or of
the press." The wording of this section is terse and
vigorous, and its meaning so plain that construction is
not needed. The right of the citizen to freely speak,
write, and publish his sentiments is unlimited, but he
is responsible at the hands of the law for an abuse of
that right. He shall have no censor over him to whom
he must apply for permission to speak, write, or pub-
lish, but he shall be held accountable to the law for
what he speaks, what he writes, and what he publishes.
It is patent that this right to speak, write, and publish,
cannot be abused until it is exercised, and before it is
exercised there can be no responsibility. The purpose
of this provision of the constitution was the abolishment
of censorship, and for courts to act as censors is directly
violative of that purpose. This provision of the consti-
tution as to freedom of speech varies somewhat from
that of the constitution of the United States, and also
more or less from the provisions of many state consti-
tutions treating of this question; but, if there is a ma-
terial difference in the various provisions, it works no

harm to this petitioner, for the provision here considered is the broader, and gives him greater liberty in the exercise of the right granted.

The meaning of this provision, or others of similar import, has been declared with unanimity by all commentators upon the law. Blackstone declares that the liberty of the press consists in laying no *previous restraints* upon publications, and not in freedom from censure for criminal matters when published. He says: "Every freeman has an undoubted right to lay what sentiments he pleases before the public; to forbid this is to destroy the freedom of the press. But, if he publishes what is improper, mischievous, or illegal, he must take the consequences of his own temerity. To subject the press to the restrictive power of a licensor, as was formerly done before and since the revolution of 1688, is to subject all freedom of sentiment to the prejudices of one man, and make him the arbitrary and infallible judge of all controverted points in learning, religion, and government. . . . . Thus the will of individuals is still left free; the abuse only of that free will is the object of legal punishment."

Story, in his work upon the Constitution, section 1885, declares: "Indeed, the liberty of the press, as understood by the law of England, is the right to publish without any previous restraint or license; so that neither the courts of justice nor other persons are authorized to take notice of writings intended for the press; but are confined to those which are printed."

DeLolme, in his Constitution of England, page 872, declares: "Liberty of the press consists in this: that neither courts of justice, nor any other judges whatever, are authorized to take notice of writings *intended* for the press, but are confined to those which are actually printed." In *Ex parte Barry*, 85 Cal. 607, 20 Am. St. Rep. 248, the foregoing doctrine is reiterated and approved.

It would seem that the jurisdiction here attempted to be exercised would essentially belong to a court of equity;

yet, even if this proceeding for a restraining order had been inaugurated in such a forum, it would have signally failed.    In Story's Equity Jurisprudence, section 948 $a$, the author says: "But the utmost extent to which courts of equity have gone, in restraining any publication by injunction, has been upon the principle of protecting the rights of property in the book or letters sought to be published.    They have never assumed, at least since the destruction of the court of star chamber, to restrain any publication which purports to be a literary work, upon the mere ground that it is of a libelous character and tends to the degradation or injury of the reputation or business of the plaintiff who seeks relief against such publication."    And this principle was declared by the learned chancellor in *Brandreth* v. *Lance*, 8 Paige, 26, 34 Am. Dec. 368, wherein he said: "It is very evident that this court cannot assume jurisdiction of the case presented by the complainant's bill, or of any other case of like nature, without infringing upon the liberty of the press, and attempting to exercise a power of preventive justice which, as the legislature has decided, cannot safely be intrusted to any tribunal consistently with the principles of free government." After referring to the court of star chamber, he proceeds: "Since that court was abolished, however, I believe there is but one case upon record in which any court, either in this country or in England, has attempted by an injunction or order of the court to prohibit or restrain the publication of a libel, as such, in anticipation."

In effect the order made by the trial court in this case was one commanding the petitioner not to commit a contempt of court, and such a practice is novel in the extreme.    The court had ample power to protect itself in the administration of justice after the contempt was committed.    As to the offender, it could punish him; as to the defendant on trial, he could be deprived of no rights by any act of this petitioner.    If the publication

deprived him of a fair and impartial trial at that time, a second trial would have been awarded him.

We conclude that the order made by the trial court was an attempted restraint upon the right of free speech, as guaranteed by the constitution of this state, and that petitioner's mouth could not be closed in advance for the purpose of preventing an utterance of his sentiments, however mischievous the prospective results of such utterance. He had the right of free speech, but at all times was responsible to the law for an abuse of that right.

For the foregoing reasons the order is annulled, as being beyond the power of the court to make.

HARRISON, J., VAN FLEET, J., HENSHAW, J., and BEATTY, C. J., concurred.

McFARLAND, J., dissenting.—I dissent. All the provisions of the constitution must be construed together, and effect given, when possible, to each. The one, section 9, of article I, which provides that "Every citizen may freely speak," etc., is to be construed in view of that large and important part of the constitution by which a judicial department of the government is created, and all the usual and necessary powers of courts given to the tribunals established under it. One of the most essential of these powers of a court is to protect itself against unlawful intrusion upon its orderly conduct of business, and to insure litigants in a pending proceeding the free and unembarrassed administration of justice. In the case at bar, in a court of record established by the constitution, a trial was gravely progressing in which a man's life was at stake, and an act was about to be done which it is admitted "would be an interference with the administration of justice, and deprive him of a fair and impartial trial." Is it possible that a court is powerless to protect a defendant, in a case pending before it, from an act that would deprive him of a fair and impartial trial? In my opinion the right given by section 9 of

article I, not to be stopped beforehand from speaking slanders and writing libels, does not include the right not to be stopped from interfering with a pending proceeding in a court, and preventing a party thereto from having a fair and impartial trial. The right to slander and libel individuals, and the right of a court to prevent interference with the course of justice in a pending trial, are not inconsistent, and may both stand together. And I think that the cases where it has been held that a threatened publication could not be enjoined, will be found to be nearly all cases of threatened libels against individuals or property, and not cases where there was a threatened interference with a pending proceeding in a court, and an attempt to deprive a party thereto of a fair and impartial trial.

I think that the order under review should be affirmed.

Temple, J., concurred.