COMMONWEALTH *vs.* JAMES McGANN & another.

Middlesex.    November 18, 1912. — January 2, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Theatre. License. Statute,* Repeal. *Constitutional Law. Words,* " At their pleasure."

St. 1904, c. 450, which requires, in towns and in all cities other than Boston, that a license for the building in which a theatrical entertainment is to be given shall be obtained from the chief of the district police, does not dispense with the necessity of obtaining also from the mayor of the city or the selectmen of the town the license for such an entertainment required by R. L. c. 102, § 172, as amended by St. 1905, c. 341. Section 15 of St. 1904, c. 450, which repealed only so much of R. L. c. 102, § 172, as was inconsistent with the later statute, did not repeal the requirement of a license from the mayor or selectmen.

R. L. c. 102, § 172, providing, as amended by St. 1905, c. 341, that the mayor of a city or the selectmen of a town may grant a license for theatrical exhibitions and "may revoke or suspend such license at their pleasure," is constitutional as a proper exercise of the police power, the words "at their pleasure" meaning in the exercise of a wise discretion for the purpose of preventing theatrical performances which are injurious to the morals of the public.

The sixteenth article of the Declaration of Rights in the Constitution of this Commonwealth, which declares that "the liberty of the press" ought not to be restrained, has no application to the restraint of the oral publication of the text of a play in a theatrical performance.

COMPLAINT, received and sworn to in the Fourth District Court of Eastern Middlesex on May 15, 1912, charging the defendants with setting up and promoting an exhibition and public show at Woburn on May 7, 9, 11 and 14, 1912, without being licensed to do so.

The case went by appeal to the Superior Court. In that court the defendants filed a plea in bar, alleging that they were the lessees of a building in Woburn known as the Lyceum Hall Theatre, which had been licensed by the chief of the district police under St. 1904, c. 450, § 2, [St. 1905, c. 342, § 1,] on August 1, 1911, for a period of one year, and that theatrical shows were given by the defendants on the dates named in the complaint under authority of this license. The Commonwealth demurred to the plea. The demurrer was sustained by *McLaughlin,* J.,

who ordered the defendants to plead guilty or not guilty. The defendants excepted to this ruling.

The defendants then pleaded not guilty and were tried before *McLaughlin,* J. The essential facts were stated as agreed in a writing signed by the counsel for the defendants and the district attorney. The Commonwealth rested upon the agreed facts, which were read to the jury. The defendants then made an offer of proof, which is described in the opinion. The judge excluded the evidence offered, and the defendants excepted. The defendants then asked the judge to make certain rulings, including rulings that under St. 1904, c. 450, § 2, [St. 1905, c. 342, § 1,] the chief of the district police in all cities except Boston is the only person authorized to issue a license permitting a building of the character described in § 1 of that statute to be used for theatrical shows; that the license issued to the defendants by the chief of the district police authorized the acts mentioned in R. L. c. 102, § 173, and that any provisions of § 172 of that chapter inconsistent with St. 1904, c. 450, were repealed by § 15 of that statute; that R. L. c. 102, §§ 172, 173, are unconstitutional and void; and that those sections are contrary to article sixteen of the Declaration of Rights, a theatrical production being a publication of the text by word of mouth.

The judge refused to make any of the rulings requested and in substance instructed the jury "that the defendants could be convicted for giving a theatrical show in the building known as the Lyceum Hall Theatre in Woburn if in the giving of such theatrical shows the defendants had no license from the mayor of Woburn when such shows were given, and even though the defendants had a license from the chief of the district police for said Lyceum Hall Theatre." The defendants excepted to this instruction and to the refusal of the rulings requested.

The jury returned a verdict of guilty; and the defendants alleged exceptions.

*P. H. Kelley,* for the defendants.

*J. J. Higgins,* for the Commonwealth.

LORING, J. 1. The effect of St. 1904, c. 450, was to require in towns and in cities other than Boston two licenses for a theatrical entertainment. One, to be issued by the chief of the district police, had to do with the safety of the public who attended

the performance. The other, to be issued under R. L. c. 102, § 172, by the selectmen or the mayor and aldermen (later under St. 1905, c. 341, by the mayor alone), had to do with the morals of the public who attended. Before the enactment of that act (St. 1904, c. 450), one license covering both aspects was to be issued by the mayor and aldermen or by the selectmen. The provision of St. 1904, c. 450, § 15, is that only "so much of section one hundred and seventy-two of chapter one hundred and two of the Revised Laws and of any other act as is inconsistent herewith is . . . repealed." The above is so plainly the true intent and effect of St. 1904, c. 450, that it is not necessary to state the act in detail. And without stating them in detail the subsequent acts (Sts. 1904, c. 460, § 4; 1905, cc. 341, 342; 1906, c. 105; 1907, c. 274; 1908, c. 385, § 2) recognize this. Requiring two licenses for the same act is not without precedent. See *Commonwealth* v. *Ellis,* 158 Mass. 555. The defendants put great reliance on the case of *Taxing District* v. *Emerson,* 72 Tenn. 312. In that case it was decided that under a statute requiring the owner of a theatre to pay a tax for the privilege of giving theatrical entertainments it was not necessary for persons employed by the owner for that purpose to pay a second tax. That does not help the defendants.

2. There can be no question of the constitutionality of the R. L. c. 102, § 172, so construed. Some theatrical performances are beneficial and some are injurious to public morals. It is within the limits of the police power to forbid the latter and to secure the former by requiring all theatres to be licensed by public officials who are authorized to revoke and suspend the license "at their pleasure," as is provided in R. L. c. 102, § 172. "At their pleasure" in that act means from time to time in the exercise of a wise discretion having in view the purposes sought by the act, namely, to prevent theatrical performances which are *contra bonos mores.* So construed, the act is not open to the objection stated in *Commonwealth* v. *Maletsky,* 203 Mass. 241, 246.

The defendant has contended, on the authority of *Dailey* v. *Superior Court,* 112 Cal. 94, that R. L. c. 102, § 172, is in violation of the rights guaranteed by the sixteenth article of the Declaration of Rights, which provides that "the liberty of the press is essential to the security of freedom in a State; it ought not,

therefore, to be restrained in this Commonwealth." What was decided in *Dailey* v. *Superior Court* was that under the Constitution of California it was not competent for a court to forbid a theatrical performance even if it would result in preventing a criminal trial then pending in its court from being a fair and impartial one. The provision of the Constitution of California there in question was in these words: "Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press." The reason for the result reached by a majority of the court in that case was that by the terms of that constitutional provision freedom of speech, including a theatrical performance, could be punished but could not be prevented. It is not necessary for us to decide whether we should agree with the conclusion reached by the majority in that case, for art. 16 of our Declaration of Rights is confined to "liberty of the press."

The defendants have further contended that if a business is so offensive that it should be prohibited it must be prohibited as to all or as to none, and that the decision in *Yick Wo* v. *Hopkins*, 118 U. S. 356, is a decision to that effect. If the defendants' contention is correct, a business which is an innocent one and even a public benefit on the one hand or a public evil on the other, according to the way in which it is conducted, cannot be regulated by requiring a license for carrying it on. The power of government under our Constitution is not so crippled. Of that there could be no doubt were the question *res integra*. In addition the practice of more than a hundred years and the decisions of this court are conclusive here against the contention. See for example *Commonwealth* v. *Davis*, 140 Mass. 485; *Commonwealth* v. *Plaisted*, 148 Mass. 375; *Quincy* v. *Kennard*, 151 Mass. 563; *Commonwealth* v. *Page*, 155 Mass. 227; *Commonwealth* v. *Parks*, 155 Mass. 531; *Commonwealth* v. *Abrahams*, 156 Mass. 57; *Commonwealth* v. *Ellis*, 158 Mass. 555; *Commonwealth* v. *Davis*, 162 Mass. 510; *Commonwealth* v. *Maletsky*, 203 Mass. 241, 247. There is nothing in *Yick Wo* v. *Hopkins*, 118 U. S. 356, to the contrary. That case was considered in *Commonwealth* v. *Parks* and *Commonwealth* v. *Abrahams, ubi supra*. What was decided in that case was that, taking the ordi-

nance there in question in connection with the way in which it had been enforced, it was an ordinance intended to be a discrimination against the Chinese on account of their race, and that that was a violation of the Fourteenth Amendment to the Constitution of the United States.

Lastly, the defendants have insisted that *Wyeth* v. *Cambridge Board of Health*, 200 Mass. 474, is a decision which supports their contention that R. L. c. 102, § 172, is unconstitutional if construed to require a license from the mayor as well as a license from the chief of the district police. We see nothing in that decision which supports that contention. In that case it was decided, (first) that the board of registration in embalming created by St. 1905, c. 473, had no authority to provide that "no permits for removal, burial or disinterment" should thereafter be issued "to any person or persons who have not been registered and received a certificate from the State board of registration in embalming;" (second) that the respondent board of health of Cambridge, having refused to issue to the petitioner a license as an undertaker solely because of this void order of the board of registration in embalming, must be taken to have determined in their discretion that the petitioner was entitled to a license but for the void order and that under those circumstances a writ of mandamus should issue.

3. The defendants offered to prove: "That during the time Watts had control of the Lyceum Hall Theatre that one William P. Murray, the son of the mayor of Woburn, worked in said theatre, and that immediately after the defendants secured the lease from the owners of the said Lyceum Hall Theatre, on April 16, 1912, as the highest bidder over the said Watts, that the mayor of Woburn notified the defendants that they would get no renewal of their license in the Walnut Street Theatre, which expired on April 20, 1912, and that no license would be issued to the defendants for the Lyceum Hall Theatre." The learned counsel for the defendants stated that this evidence was offered "for the purpose of showing that the defendants had been unjustly discriminated against by the mayor of Woburn by his refusal to issue to them a license or to give them a hearing as to why a license should not be issued; and that the above evidence in connection with the conduct of the mayor of the city of Woburn,

as stated in the agreed facts, was competent evidence to show an unjust discrimination against the defendants in violation of the provisions of the Fourteenth Amendment to the Constitution of the United States, as declared in the case of *Yick Wo* v. *Hopkins,* 118 U. S. 356." Of this offer of proof it is enough to say that there was no offer to prove the character of theatrical performances given by the defendants at the Walnut Street Theatre. In the absence of such evidence it could not be inferred that the mayor had not refused the defendants licenses for both theatres in the honest exercise of the discretion vested in him by R. L. c. 102, § 172. We do not intimate that if the evidence had gone further the defendants' contention would have been sustained.

*Exceptions overruled.*