[No. B130805. Second Dist., Div. Seven. Nov. 20, 2000.]

JAMES S. HURVITZ, Plaintiff, Cross-defendant and Appellant, v. STEVEN M. HOEFFLIN et al., Defendants, Cross-complainants and Respondents;
JACKIE HURVITZ, Cross-defendant and Appellant.

STEVEN M. HOEFFLIN, Plaintiff and Respondent, v. JAMES S. HURVITZ et al., Defendants and Appellants.

JAMES S. HURVITZ et al., Plaintiffs and Appellants, v. STEVEN M. HOEFFLIN, Defendant and Respondent.

COUNSEL

Horvitz & Levy, Lisa Perrochet, Mary-Christine Sungaila, Robert Wright; King & Ferlauto and Thomas M. Ferlauto for Appellants.

Keller, Price & Moorhead and Leslie M. Price, Jr. for Respondents.

OPINION

JOHNSON, Acting P. J.—In this case we hold an order by the trial court sealing certain court documents and barring disclosure of certain information, whether obtained through discovery or otherwise, is an unconstitutional prior restraint on speech.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

This appeal arises from a daisy chain of litigation among Dr. Steven M. Hoefflin, a cosmetic surgeon whose patients included many celebrities, and several of his former employees and associates. Appellant Dr. James S. Hurvitz is also a cosmetic surgeon, and had a business relationship with Hoefflin until the two reached a parting of the ways in 1996. Hurvitz filed suit against Hoefflin and his medical corporation, alleging causes of action for breach of contract and various torts, including misrepresentation, breach of fiduciary duty, and slander per se. Hoefflin denied the allegations and filed a cross-complaint against Hurvitz and his wife, appellant Jackie Hurvitz, alleging various business torts on the part of the Hurvitzes.

Also in 1996, four members of Hoefflin's administrative and medical staff, Barbara Maywood, Kim Moore-Mestas, Lydia Benjamin and Donna Burton (former employees), filed a lawsuit against him alleging sexual harassment (harassment action). The case settled shortly after it was filed, with each of the former employees receiving $42,500 in exchange for their agreement to: (1) waive all claims against Hoefflin; (2) seal the Los Angeles Superior Court case file in the matter; (3) keep the subject matter of their claims and the terms of the settlement confidential; (4) not disclose the names of Hoefflin's patients or try to solicit them for two years following the settlement; and (5) not "criticize, defame or disparage" Hoefflin or any persons or entities related to him and his medical corporation.

---

[1]Appellants' brief contains a 24-page "statement of the case," consisting in large part of statements of purported fact supported only by reference to the many press clippings included in their request for judicial notice. While we can and do take judicial notice of the existence and contents of the materials provided in the request for judicial notice, we cannot and do not take judicial notice of the truth of the matters contained therein. However, we include some of the press reports in order to aid understanding of the context of the trial court's order.

As part of the settlement of the harassment action, the former employees' attorneys executed a letter addressed "to whom it may concern," stating as follows: "In connection with our initial representation of [the former employees] a working draft of a proposed complaint was prepared before our investigation was completed. Regrettably, the complaint was inadvertently filed through an internal secretarial misunderstanding and immediately dismissed the same day when we learned of the mistaken filing. [¶] Upon further investigation, we have concluded that the allegations contained in the mistakenly filed complaint were without sufficient factual or legal basis. [¶] We regret any inconvenience or embarrassment the filing of the complaint has caused to Steven M. Hoefflin, M.D." Under the terms of the settlement Hoefflin was permitted to "use and disclose" the letter "if anyone inquires regarding the complaint or the subject matter of the complaint." The former employees, on the other hand, under the terms of the settlement could "only state that the matter has been resolved" and "say nothing further." Finally, Hoefflin agreed not to "criticize, defame or disparage" the former employees to third parties.

On October 26, 1997, the Washington Post published an article containing allegations of wrongdoing by Hoefflin, based on the allegations in a complaint prepared in connection with the former employees' action, but never filed. These allegations included highly inappropriate behavior by Hoefflin with respect to patients who had been anesthetized for surgical procedures. For example, Hoefflin was alleged to have exposed and ridiculed the genitals of unconscious patients. The Post reported Hurvitz had notified its reporters about the allegations against Hoefflin, and quoted Hurvitz as saying "My motive was to do the right thing. I was given this information and what could I do? I came forward, I had a conscience. There needs to be an independent, objective investigation of these charges." According to press reports, the California Medical Board did indeed launch an investigation into "a telephone complaint in 1996 alleging that [Hoefflin] used drugs and fondled and photographed patients—many of them in the entertainment industry while they were under anesthesia."

Hoefflin filed a separate action against appellants, alleging libel and slander per se in connection with the allegations published by the Post. This action was consolidated with the original *Hurvitz v. Hoefflin* action in January 1998. In his answer in the second action, Hurvitz admitted having provided information and documents to the *Post* reporter.

In April, 1998, appellants filed another complaint for defamation and interference with economic advantage against Hoefflin, alleging he had defamed them in his public response to the Post article. On October 6, 1998,

the superior court found the Hoefflin/Hurvitz cases related to three other cases pending between Hoefflin and the former employees and their attorneys.

On May 15, 1998, Hoefflin sued the former employees for various torts relating to the dissemination of the allegations in the Post article, and for breach of the settlement agreement in the harassment action. On October 29, 1998, the former employees sued Hoefflin for defamation and breach of contract. This complaint included the allegations of wrongdoing by Hoefflin with respect to anaesthetized patients, but did not give the patients' names. On February 1, 1999, Hoefflin filed a motion for sanctions against the former employees and their attorney, arguing their defamation suit was filed in bad faith and for the purpose of harassment.

On February 16, 1999, in opposition to the motion for sanctions, the former employees filed a joint declaration in which they repeated the allegations of wrongdoing from the harassment complaint and the Post article, but for the first time gave the names of the patients against whom the alleged wrongdoing was directed. The patients included very well-known celebrities, and the contents of the declaration were widely reported in the media. The trial court sealed the declaration the following day.

Hoefflin immediately moved to shorten time for a protective order to prevent any further disclosure of confidential information concerning patients of any of the physicians involved in the five related cases. A hearing on Hoefflin's motion was held on February 25, 1999. At the conclusion of the hearing, the trial court issued an interim gag order, as follows:

"First, the court's sealing order regarding the declarations of Barbara Maywood, Kim Moore-Mestas, Lydia Benjamin and Donna Burton was done in order to protect the privacy rights of both public and private individuals who were referred to in these declarations as well as to preserve the patient-physician privilege held by those individuals.

"This court is required to recognize, respect and protect the rights of those persons not parties to this action.

"It is this court's goal to allow the parties freedom to fully litigate this matter. This right to litigate does not include the right to share with others, including the press, privileged information about third persons not involved in this lawsuit on the basis that the need to share this information is permitted on the First Amendment right to free speech. This court is also mindful of the right of all parties in this litigation to an unbiased jury.

"Needless dissemination of this privileged information, this court finds, might prejudice potential jurors. Although some of this prejudice might inure against the defendant doctors, other prejudice could run against the plaintiff and plaintiffs' attorneys for what might be viewed as grandstanding or attempting to grab the spotlight at the expense of nonparty patients.

"Consequently, after balancing the rights to free speech of the attorneys and the parties, the right to a fair and impartial jury panel for all parties, the physician-patient privilege of both celebrity and noncelebrity patients and their right to privacy, and finally the right to dignity of all the parties and third persons, this court finds that a protective order is necessary.

"Further, as it pertains to the declarations contained in the opposition papers filed on February 16th, 1999, by parties Maywood, Moore-Mestas, Benjamin and Burton and sealed by this court on February 17, 1999, these declarations have been thoroughly reviewed by myself for two purposes:

"One, to understand these plaintiffs' opposition to the request for sanctions; and secondly to consider the various parties' requests to unseal these declarations. These declarations contain specific information about both celebrity and noncelebrity patients.

"These declarations set forth not only the names but also the treatment rendered, physical oddities, treatment complications and other personal information. This court considered redacting the names of the patients but finds that this procedure would be inadequate protection because of their physician-patient privilege and their rights to privacy and dignity.

"Because of the nature of the patient descriptions, including events surrounding the treatment of these individuals and the types of treatment, it would be impossible to guarantee that these rights would remain unsullied.

"The reason for this protective order and sealing order is that identifying these individuals by name, since confidential information concerning their medical treatment has been disclosed in the pleadings filed in this case, would violate the physician-patient privilege held by these third parties under Evidence Code Section 993.

"The party physicians are not the holders of this privilege. I want to stress that. The holders of the privilege are not the physicians and not the attorneys in this case, and lack the authority—the party physicians are not holders of this privilege, and they lack the authority and capacity to waiver [sic] their patients' privilege under Evidence Code section 993. Rather, it is the patients who hold the privilege.

"Under Evidence Code section 994, a physician is authorized to claim the privilege to prevent disclosure of confidential communication between a patient and a physician. Further, this court finds that courts generally are obligated to protect the privileges and rights of third parties not involved in litigation.

"And I'm not just referring to physician-patient rights or rights of privacy here, but I'm talking about all rights of persons not involved actively in the litigation.

"Plaintiffs argue that since the patients were unconscious and under anesthesia there was no, quote, 'communication,' close quote, between the physician and the patient and, therefore, the privilege does not apply. However, confidential communications, quote, 'means information, including information obtained by an examination of a patient . . . ,' close quote. That's under Evidence Code section 992.

"Therefore, any information that these doctors obtained as a result of communicating with or examining these patients during their treatments or consultations is privileged.

"While the plaintiffs cite case law to support their argument that a patient's name is not protective [sic] communication if its disclosure would reveal nothing regarding the person's medical condition—that's under Rudnick, R-U-D-N-I-C-K, versus Superior Court, a 1974 case found at 11 Cal.3d 924 at 933 [114 Cal.Rptr. 603, 523 P.2d 643].

"In this case these individuals' medical condition, type of treatment and surgeries have been disclosed in intimate detail in these declarations. To reveal their names would expose these individuals to an unwarranted invasion of their privacy rights and rights to dignity and would violate their physician-patient privilege.

"Consequently, this court finds it necessary to order the following:

"Number 1, the declarations contained in the plaintiff's opposition filed in Maywood, et al. versus Hoefflin, et al. on or about February 16, 1999, are to remain sealed based on the physician-patient privilege and the patients' rights to privacy and dignity.

"Secondly, counsel are ordered to meet and confer and establish a system for identifying the individuals in neutral terms, such as 'patient number 1' or 'visitor number 1.'

"The use of a neutral patient identification system, this court finds, will protect the privileges of the patients and yet allow for complete discovery in the aggressive litigation of this matter.

"No party, attorney, or their agents and employees shall reveal or state nor in any manner release or publish any information which would identify any patient of Dr. Hoefflin, Dr. Hurvitz, or Dr. Goodstein by name or initials, occupation, physical attributes and/or distinguishing physical features.

"I want to make it clear, ladies and gentlemen, that I am not preventing you from talking about what you believe happened to the patients or happened in the rooms, in the operating room or wherever else. I simply am trying to protect the right to privacy and the physician-patient privileges and the right to dignity of people who are not part of this lawsuit. I am not in any way trying to restrain you from discussing or talking about, sending e-mails, writing your friends, calling your mother, or any other communication that deals with the actions that you believe occurred during the treatment of these people. I'm simply trying to protect the rights of nonparties to this lawsuit.

"Any documents filed with this court in the future shall have the names of these patients redacted and substituted with a neutral designation previously agreed to among the parties. This order also applies to depositions distributed to others apart from the attorneys, parties and their agents and employees.

"Each party, all witnesses and deposition officers shall be provided with a copy of this order in giving testimony in connection with this lawsuit or being interviewed in connection therewith."

After the February 26 hearing, counsel for the parties engaged in several sessions, among themselves and with the trial court, in an attempt to agree on a final protective order. At a final hearing on March 5, 1999, the trial court rejected appellants' proposed order restricting only the dissemination of information obtained through discovery.

The trial court's written order, filed on March 19, 1999, contained the trial court's findings as expressed at the February 26 hearing, and contained more details about how patients should be referred to in connection with the lawsuit and procedures regarding depositions and deposition transcripts. The order defined "confidential information" as "any information which would identify any Patient, including but not limited to the Patients' name or initials, occupation, physical attributes, and/or distinguishing physical features." It specifically prohibited "revealing, stating or in any manner releasing or publishing" any confidential information without prior court approval, whether the information was obtained via discovery or independently.

The Hurvitzes appealed and contend the order, as well as the trial court's order sealing the former employees' declaration, constitutes an unconstitutional prior restraint on free speech to the extent it enjoins them from disseminating information learned outside the discovery process.

## DISCUSSION

■ The right to free speech is, of course, one of the cornerstones of our society. The First Amendment to the United States Constitution provides "Congress shall make no law . . . abridging the freedom of speech, or of the press."[2] The California Constitution is even broader: "Every person may freely speak, write and publish his or her sentiments, on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."[3]

As our Supreme Court explained over 100 years ago, "The wording of this section is terse and vigorous, and its meaning so plain that construction is not needed. The right of the citizen to freely speak, write, and publish his sentiments is unlimited, but he is responsible at the hands of the law for an abuse of that right. He shall have no censor over him to whom he must apply for permission to speak, write, or publish, but he shall be held accountable to the law for what he speaks, what he writes, and what he publishes."[4]

Orders which restrict or preclude a citizen from speaking in advance are known as "prior restraints," and are disfavored and presumptively invalid.[5] Gag orders on trial participants are unconstitutional unless (1) the speech sought to be restrained poses a clear and present danger or serious and imminent threat to a protected competing interest; (2) the order is narrowly tailored to protect that interest; and (3) no less restrictive alternatives are available.[6] The trial court must make express findings showing it applied

---

[2]The First Amendment applies to the states through the due process clause of the Fourteenth Amendment. (*Cincinnati v. Discovery Network, Inc.* (1993) 507 U.S. 410, 412, fn. 1 [113 S.Ct. 1505, 1508, 123 L.Ed.2d 99].)

[3]California Constitution, article I, section 2, subdivision (a).

[4]*Dailey v. Superior Court* (1896) 112 Cal. 94, 97 [44 P. 458].

[5]*Organization for a Better Austin v. Keefe* (1971) 402 U.S. 415, 419 [91 S.Ct. 1575, 1578, 29 L.Ed.2d 1] ("Any prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity. [Citations.]"); *Gilbert v. National Enquire , Inc.* (1996) 43 Cal.App.4th 1135, 1136 [51 Cal.Rptr.2d 91] (*Gilbert*).

[6]*Levine v. U.S. Dist Court for C. Dist. of Cal.* (9th Cir. 1985) 764 F.2d 590, 595 (*Levine*).

this standard and considered and weighed the competing interests.[7] As the reviewing court, we make an independent examination of the entire record to determine the constitutionality of the trial court's order in light of this standard.[8]

 Here, the trial court found the confidential information was protected by the physician-patient privilege. It further found the dissemination of the information "might prejudice potential jurors." Finally, it found the information was protected by the patients' rights of "privacy and dignity." While we agree with the trial court these are important considerations, we cannot agree they are sufficient to justify prior restraint on the parties' speech in this case.[9]

## I. THE MERE POSSIBILITY OF PREJUDICE TO POTENTIAL JURORS DOES NOT JUSTIFY THE PRIOR RESTRAINT.

The trial court based its order in part on its finding "needless dissemination of this privileged information . . . might prejudice potential jurors." This does not constitute a finding a risk of prejudice actually exists, and indeed there is no evidence in the record to support such a finding. Where a party contends his or her right to a fair trial has been or will be compromised by pretrial publicity, the law has long imposed on that party the burden of producing evidence to establish the prejudice.[10] "[I]t is not enough for a court to decide that the fair trial right *may* be affected by the exercise of free speech."[11] Here, the trial court's ruling relies on just such speculation. This is not enough to support the prior restraint on speech.[12]

---

[7]See *Nebraska Press Assn. v. Stuart* (1976) 427 U.S. 539, 563 [96 S.Ct. 2791, 2804-2805, 49 L.Ed.2d 683].

[8]*L.A. Teachers Union v. L.A. City Bd. of Ed.* (1969) 71 Cal.2d 551, 557 [78 Cal.Rptr. 723, 455 P.2d 827].

[9]Appellant does not challenge the order insofar as it applies to materials obtained through discovery. Therefore our analysis pertains only to the portion of the order pertaining to information obtained independently of discovery. (See *Seattle Times Co. v. Rhinehart* (1984) 467 U.S. 20, 33 [104 S.Ct. 2199, 2208, 81 L.Ed.2d 17] [protective order is permissible under the First Amendment so long as it is limited to information obtained through discovery]; *In re Marriage of Candiotti* (1995) 34 Cal.App.4th 718, 724 [40 Cal.Rptr.2d 299] ["the part of the protective order restricting the dissemination of information obtained through [appellant's] discovery request is a proper restriction"].)

[10]*County of Los Angeles v. Superior Court* (1967) 253 Cal.App.2d 670, 683-684. [62 Cal.Rptr. 435].

[11]*Levine, supra,* 764 F.2d 590, 603 (conc. & dis. opn. of Nelson, J.), italics added.

[12]See *In re Agent Orange Product Liability Litigation* (E.D.N.Y. 1983) 99 F.R.D. 645, 649 ("the risk of prejudice to a defendant's right to a fair trial must be based on more than mere speculation").

## II. THE PHYSICIAN-PATIENT PRIVILEGE DOES NOT JUSTIFY THE PRIOR RESTRAINT.

The trial court also found the confidential information was protected by the physician-patient privilege. The parties dispute whether the privilege applies, but even if we assume the information is covered by the physician-patient privilege, its dissemination may not be subject to prior restraint of the type in the trial court's order. ■ As a rule of evidence, the physician-patient privilege applies only "if properly invoked *in a proceeding in which testimony can be compelled.*"[13] The California Supreme Court made this clear in *Rudnick v. Superior Court,*[14] when it stated "it is perhaps pertinent to remember the obvious, namely, that the physician-patient privilege is a rule of evidence concerning the admissibility of evidence in court and is not a substantive rule regulating the conduct of physicians." ■ Thus, while the privilege protects the patient from forced disclosure in the course of litigation, it may not be extended to cover the dissemination of information already made known outside of litigation.

To be sure, there are statutes prohibiting health care providers from disclosing confidential health care information.[15] However, while under these statutes an unauthorized disclosure may give rise to a cause of action in tort, or various administrative sanctions against the physician, they cannot support a prior restraint on speech. ■ To the contrary, in *Gilbert*, the court held " 'publication of information about a person, "without regard to truth, falsity, or defamatory character of that information," is not subject to prior restraint.' [Citation.] While [a party] may be held responsible for abusing his right to speak freely in a subsequent tort action, he has the initial right to speak freely without censorship."[16] This rationale applies with equal force to speech which is violative of a privilege or which subjects the speaker to administrative or professional sanctions. ■ And indeed, respondent can point to no case where any court in the nation has held a threatened violation of the physician-patient privilege, or any other privilege, justifies a prior restraint on speech.[17]

---

[13]*Reynaud v. Superior Court* (1982) 138 Cal.App.3d 1, 9 [187 Cal.Rptr. 660], italics added.

[14]*Rudnick v. Superior Court, supra*, 11 Cal.3d 924, 932, footnote 10.

[15]See, e.g., Business and Professions Code section 2263 (willful and unauthorized violation of a professional confidence constitutes unprofessional conduct); Civil Code section 56 et seq. (Confidentiality of Medical Information Act intended to preserve patients' right to confidentiality regarding their medical treatment).

[16]*Gilbert, supra*, 43 Cal.App.4th 1135, 1145-1146.

[17]Because we find the physician-patient privilege does not support the trial court's order, we need not decide whether or to what extent there may have been a waiver of the privilege.

## III. THE PATIENTS' RIGHT TO PRIVACY DOES NOT JUSTIFY THE PRIOR RESTRAINT.

Finally, the trial court based its order on a finding that publication of the confidential information would violate the patients' rights of "privacy and dignity." The things Hoefflin is alleged to have done to his anaesthetized patients are vulgar and crude in the extreme, and we do not doubt those patients, if identified, would suffer embarrassment and shame. However, sparing citizens from embarrassment, shame, or even intrusions into their privacy has never been held to outweigh the guarantees of free speech in our federal and state Constitutions. Just as a court may not enjoin speech which constitutes the tort of defamation,[18] it also may not enjoin the speech at issue here, which may or may not ultimately be found to constitute the tort of invasion of privacy. Indeed, we are aware of no case in any jurisdiction in which a prior restraint has been imposed to prevent an intrusion into privacy.

*In re Marriage of Candiotti (Candiotti)*[19] demonstrates a prior restraint on speech may not be constitutionally imposed to prevent the dissemination of information obtained outside the discovery process, even if it is libelous and even if it invades a person's privacy. In *Candiotti*, the family law court restrained a mother, Debra, from "disseminating information to third parties about the background of her ex-husband['s] present wife, Donna." The trial court based its order on concern for the welfare of the minor children, who it feared would be harmed by exposure to negative information about their stepmother.[20] Notably, even the trial court rejected a justification based on Donna's right to privacy, and concluded "if Donna's privacy right alone was at issue, Debra's right to free speech would clearly prevail."[21] The Court of Appeal struck down the order to the extent it covered information obtained outside the discovery process, holding the order "constitutes undue prior restraint of speech" to the extent it "actually imping[ed] on a parent's right to speak about another adult, outside the presence of the children."[22] The court held the order was unconstitutional because it was "aimed at conduct that might cause others, outside the immediate family, to think ill of Donna. Such remarks by Debra may be rude or unkind. They may be motivated by hostility. To the extent they are libelous, they may be actionable. But they are too attenuated from conduct directly affecting the children to support a

---

We also need not decide whether, as appellant contends, various statutory exceptions to the privilege should apply in this case.

[18]*Gilbert, supra,* 43 Cal.App.4th 1135, 1145-1146.

[19]*Candiotti, supra,* 34 Cal.App.4th 718.

[20]*Candiotti, supra,* 34 Cal.App.4th 718

[21]*Candiotti, supra,* 34 Cal.App.4th 718, 721.

[22]*Candiotti, supra,* 34 Cal.App.4th 718, 725.

prior restraint on Debra's constitutional right to utter them."[23] In this case, too, there can be no constitutional justification for a prior restraint on speech, solely because it may invade the patients' privacy or cause others to think ill of them.

The order in this case is particularly troubling because of its chilling effect on the litigants' ability to properly prepare for trial. Every third party witness must be shown the order, and agree to be bound thereby, before counsel can interview them about the case. Thus, unless a witness agrees to voluntarily have his or her right of free speech curtailed on penalty of contempt of court, he or she may not be interviewed or deposed. This burden on the parties' ability to freely communicate with witnesses and potential witnesses is not justified, even by the patients' right to privacy.

The burden on the parties' ability to prepare for trial is especially unwarranted because at this point the confidential information has already been made public by means of the former employees' declarations, which were in the public record for one day before they were sealed, and the contents were widely reported as a result. Indeed, those reports are available on the Internet even now. As the court held in *Sipple v. Chronicle Publishing Co.*,[24] "there can be no privacy with respect to a matter which is already public or which has previously become part of the 'public domain.'"[25] In its order, the trial court acknowledged "once the information is released, unlike a physical object, it cannot be recaptured and sealed." We agree with this assessment, and we agree with appellants that it reveals why the order is unconstitutional: because the information is already public, the harm to the patients' privacy has already occurred and cannot be prevented by the order. While we are sympathetic to the trial court's concerns, neither the state nor the federal Constitution permits the court to lock the barn door after the horse is gone.

---

[23]*Candiotti, supra,* 34 Cal.App.4th at page 726, footnote omitted. See also *Gilbert, supra,* 43 Cal.App.4th 1135, 1147 ("The threatened invasion to Gilbert's right of privacy and the threatened harm to her reputation are not the sort of 'extraordinary circumstances' required to justify a prior restraint.").

[24]*Sipple v. Chronicle Publishing Co.* (1984) 154 Cal.App.3d 1040, 1047 [201 Cal.Rptr. 665].

[25]See also *Cox Broadcasting Corp. v. Cohn* (1975) 420 U.S. 469, 494-495 [95 S.Ct. 1029, 1046, 43 L.Ed.2d 328] (no invasion of privacy where newspaper publishes name of crime victim, gleaned from court records); *Fort Wayne Journal-Gazette v. Baker* (N.D.Ind. 1992) 788 F.Supp. 379, 388 ("in the face of the First Amendment the interests of privacy fade when the information involved appears in the public record").

At oral argument, respondents cited *Michaels v. Internet Entertainment Group, Inc.*[26] in support of their contention the right to privacy constitutes a "compelling interest" sufficient to justify a prior restraint on speech. *Michaels* is distinguishable. In *Michaels*, a well-known actress and a rock star sought and obtained an injunction against the dissemination of a video of them having sexual relations, on three grounds: copyright infringement, violation of the state law right to publicity, and tortious violation of the right to privacy.[27] The trial court granted the requested injunction, finding the plaintiffs had, on all three of their claims, showed the requisite combination of likelihood of success on the merits and the possibility of irreparable injury.[28] In this case, as appellant points out, respondents did not even attempt to comply with the requirements for obtaining a preliminary injunction, including demonstrating likelihood of success on the merits and the possibility of irreparable injury, or posting a bond. Indeed, as there is no claim for tortious invasion of privacy before the court, it is difficult for us to imagine how respondents would even begin to meet those requirements. Therefore, *Michaels* does not provide authority for the trial court's order in this case.[29]

## IV. THE TRIAL COURT'S SEALING ORDER IS ALSO UNJUSTIFIED.

In light of our conclusion the trial court's order restricting dissemination of the confidential information does not withstand constitutional scrutiny, we also must vacate the trial court's order sealing the former employees' declaration.[30] "Court records are public records, available to the public in general, including news reporters, unless a specific exception makes specific records nonpublic."[31] No such specific exception applies in this case because, as we have seen, there is no overriding public interest to justify

---

[26]*Michaels v. Internet Entertainment Group, Inc.* (C.D.Cal. 1998) 5 F.Supp.2d 823 (*Michaels*).

[27]*Michaels, supra,* 5 F.Supp.2d at page 828.

[28]*Michaels, supra,* 5 F.Supp.2d at page 828.

[29]The fact a court may enjoin certain forms of speech, after that speech has been adjudicated as unlawful, is not in dispute. (See *Aguilar v. Avis Rent a Car System, Inc.* (1999) 21 Cal.4th 121, 138 [87 Cal.Rptr.2d 132, 980 P.2d 846] [injunction prohibiting derogatory racial epithets in the workplace is not an unconstitutional prior restrain on speech, "because the order was issued only after the jury determined that defendants had engaged in employment discrimination, and the order simply precluded defendants from continuing their unlawful activity"].) In this case, however, there has been no judicial decree establishing the disclosure of the confidential information is in any way unlawful.

[30]See *Gilbert, supra,* 43 Cal.App.4th 1135, 1149 ("the issues regarding the preliminary injunction [restraining disclosure of certain information] and the sealing of the record are intertwined").

[31]*Gilbert, supra,* 43 Cal.App.4th 1135, 1149. See also *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1217-1218 [86 Cal.Rptr.2d 778, 980 P.2d 337] (court

restrictions on the dissemination of confidential information obtained outside of the discovery process. Moreover, as discussed above, the former employees' declaration was part of the public record for one day, during which time it was widely reported in the media, and it makes little sense to seal information after the fact.

## DISPOSITION

The order is reversed to the extent it applies to information obtained independently of discovery. To the extent it applies to information obtained through discovery, it is affirmed. The order sealing the records in the trial court is vacated, and the record on appeal is also ordered unsealed. All parties to bear their own costs on appeal.

Woods, J., and Neal, J., concurred.

The petition of respondent Steven M. Hoefflin for review by the Supreme Court was denied March 21, 2001. Baxter, J., was of the opinion that the petition should be granted.

records presumably public unless trial court finds sealing order narrowly tailored to address substantial probability of harm to an overriding interest).