CANTIL-SAKAUYE, C. J.,
Concurring.—I concur fully in the majority opinion’s conclusion that Civil Code section 2527 (section 2527) does not violate the state constitutional right of free speech embodied in article I, section 2 of the California Constitution (article I, section 2). Unlike the majority, however, I would base that determination on the ground that the provisions of section 2527 do not even implicate the protections afforded by the state constitutional free speech clause.
In finding that section 2527 implicates the state free speech clause, the majority relies heavily on a passage from this court’s opinion in Gerawan *365 Farming, Inc. v. Lyons (2000) 24 Cal.4th 468, 491 [101 Cal.Rptr.2d 470, 12 P.3d 720] (Gerawan I) that indicates that a statute that requires the disclosure of factual information an individual or entity would otherwise not choose to disclose implicates the right to freedom of speech protected by article I, section 2. In my view, however, the relied-upon language in Gerawan I— which was not necessary to the holding in that case—is overbroad and misleading insofar as it suggests that the state constitutional right of free speech encompasses not only a right to speak but also a parallel and coextensive right not to speak. I would take this opportunity to clarify and narrow the language in question. As explained, I believe it is more faithful to both the language and historic understanding of the California free speech clause to hold that section 2527 and similar statutory provisions requiring the disclosure of factual information do not implicate (or, in other words, do not fall within the reach of) the state constitutional free speech clause.
As the majority opinion recognizes, article I, section 2 provides in relevant part: “Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press.” (Art. I, § 2, subd. (a).) By its terms, article I, section 2 declares the right protected by this constitutional provision is the right to “freely speak, write and publish his or her sentiments on all subjects.” On its face, the provision does not purport to afford a constitutional right to refuse to disclose information.
I acknowledge that there are unquestionably circumstances in which a statute that compels speech will implicate the protections of article I, section 2—for example, when a statute requires an individual to pledge allegiance to or express belief in a political, ideological, or philosophical position with which he or she disagrees, or when the compelled disclosure is so intertwined with protected speech that it is likely to chill such protected speech. In my view, however, it is not accurate to state that, as a general matter, article I, section 2 was intended, or should be interpreted, to afford a broad constitutional right to withhold information. There are other state constitutional provisions that are ordinarily associated with a right of nondisclosure—the privilege against self-incrimination and the right of privacy, for example—but it strains credulity to suggest that an individual who refuses to provide factual information when questioned at trial or at a legislative hearing or who declines to provide information required on a tax return or in order to obtain a permit is, by such refusal, exercising his or her right of free speech. As the earliest California cases applying the state constitutional free speech clause make clear, “[t]he purpose of this provision of the constitution was the abolishment of censorship . . .” (Dailey v. Superior Court (1896) 112 Cal. 94, 97 [44 P.458]; see In re Shortridge (1893) 99 Cal. 526, 533-535 [34 P. 227]), not to establish a fundamental constitutional right to decline to provide information.
*366 As noted, the source of the majority’s contrary conclusion lies in a passage contained in Gerawan I, supra, 24 Cal.4th 468, that states: “Article I’s right to freedom of speech, like the First Amendment’s, is implicated in speaking itself. Because speech results from what a speaker chooses to say and what he chooses not to say, the right in question comprises both a right to speak freely and also a right to refrain from doing so at all, and is therefore put at risk both by prohibiting a speaker from saying what he otherwise would say and also by compelling him to say what he otherwise would not say.” (Id. at p. 491, italics added.) In my view, the emphasized language is overbroad and misleading insofar as it suggests that, as a general matter, the state constitutional right of free speech encompasses not only a right to speak but a parallel and coextensive right not to speak.
In the past, article I, section 2 has been interpreted expansively to protect the right to speak freely (see, e.g., Robins v. Pruneyard Shopping Center (1979) 23 Cal.3d 899, 908-911 [153 Cal.Rptr. 854, 592 P.2d 341]; Dailey v. Superior Court, supra, 112 Cal. at pp. 97-99), but the state free speech clause has not historically been understood or interpreted as affording a parallel broad constitutional right “not to speak” when an individual or entity is required by a statute or regulation to disclose factual information. Throughout California’s history, hundreds of statutory provisions and regulations have been enacted or adopted in a great variety of contexts that require individuals or entities to ascertain and disclose factual information that the individual or entity might otherwise choose not to disclose. For example, disclosure of a significant amount of information is required whenever an individual or entity seeks to obtain a permit or license (see, e.g., Bus. & Prof. Code, § 10151), attain admission to a public university (see, e.g., Cal. Code Regs., tit. 5, § 40753), or qualify for a tax exemption or other public benefit (see, e.g., Rev. & Tax. Code, § 17131 et seq.); a refusal to disclose such required information has never been viewed as the exercise of the right of free speech. Similarly, statutes and regulations routinely require disclosure of, for example, the ingredients and nutritional value of packaged food (see, e.g., Health & Saf. Code, § 110100), the total interest and fees applicable to a credit card or loan (Civ. Code, §§ 1748.10-1748.14, 1748.20-1748.23, 1917.712; Bus. & Prof. Code, § 10240 et seq.), the presence of potentially carcinogenic chemicals on business premises (Health & Saf. Code, § 25249.6 et seq. [Prop. 65]), the condition of real property upon sale of the property (Civ. Code, § 1102 et seq.), any breach of security experienced by a business maintaining computerized personal information data (Civ. Code, §§ 1798.29, 1798.82), or the nature and investment risk of any insurance product or annuity (Ins. Code, § 762). (See maj. opn., ante, at pp. 360-361 [listing additional Cal. disclosure statutes].) Although such widespread statutory and regulatory disclosure requirements have sometimes been challenged on other constitutional grounds—for example, as violating the right of privacy, due process, or equal *367 protection (see, e.g., Hays v. Wood (1979) 25 Cal.3d 772, 783, 786-795 [160 Cal.Rptr. 102, 603 P.2d 19]; Fendrich v. Van de Kamp (1986) 182 Cal.App.3d 246, 258-264 [227 Cal.Rptr. 262]; Gerling Global Reinsurance Corp. v. Low (9th Cir. 2002) 296 F.3d 832, 844-848, 851)—such requirements have not been viewed as implicating the state constitutional right of free speech and historically have not been challenged on that ground. The absence, over many years, of free speech challenges to the numerous California disclosure statutes and regulations speaks volumes regarding the well-understood meaning of the state constitutional free speech guarantee.
This is not to say that there are no instances in which a statute that compels speech will implicate the interests that the state free speech clause is intended to protect and will therefore properly be analyzed under the principles generally applicable to other free speech claims. For example, a statute that requires an individual to express belief in an ideological or philosophical precept with which the individual disagrees (cf., e.g., Board of Education v. Barnette (1943) 319 U.S. 624, 631-642 [87 L.Ed. 1628, 63 S.Ct. 1178] [compulsory flag salute and pledge of allegiance]), or that requires a commercial entity to financially subsidize a promotional advertisement that the entity does not endorse and that is drafted by the entity’s competitors (Gerawan I, supra, 24 Cal.4th at pp. 510-511 [required subsidizing of generic plum marketing campaign]), is properly found to implicate the interests protected by the free speech clause. Similarly, a statute that requires the disclosure of information under circumstances that realistically pose a chilling effect on the exercise of constitutionally protected speech is also properly subject to evaluation under constitutional free speech principles. (Cf., e.g., N. A. A. C. P. v. Alabama (1958) 357 U.S. 449, 460-463 [2 L.Ed.2d 1488, 78 S.Ct. 1163] [disclosure of membership list of controversial political organization].)
But I believe it is not accurate to maintain, as the language in Gerawan I suggests, that every statute that requires an individual or entity to disclose factual information that the individual or entity would not otherwise disclose falls within the bounds of the state free speech clause. Instead, because the overwhelming majority of statutes or regulations that require an individual or entity to ascertain and disclose factual information do not threaten or otherwise put at risk the protection that the state free speech clause was intended to provide, I believe that a statute that simply requires the ascertainment and disclosure of factual information should be viewed, presumptively, as not implicating the state constitutional free speech clause. Only when there are special circumstances indicating that the required disclosure potentially threatens an interest that the free speech clause was intended to protect should the statute be scrutinized under the free speech guarantee embodied in article I, section 2.
*368 If a statute such as section 2527 is viewed as falling within the reach of the state free speech clause, I would agree with the majority’s conclusion that the validity of the statute would properly be evaluated under the deferential rational basis standard. In my view, however, it is not only more faithful to the language and history of article I, section 2, but also more analytically coherent to conclude that the state free speech clause is not implicated when a statute requiring disclosure of factual information does not threaten any of the interests that the free speech clause was intended to protect, rather than to conclude, as the majority does, that such a statute implicates the free speech clause but is nonetheless subject to no greater scrutiny than if the statute did not implicate the right of free speech.