[No. G030802. Fourth Dist., Div. Three. June 29, 2004.]

CARLOS MAGGI, as Trustee, etc., et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
DAVID ALKOSSER et al., Real Parties in Interest.

**COUNSEL**

Parilla, Militzok, Shedden & Garber, Paul H. Parilla, Marc Ettinger; Law Offices of Jefferey B. Lurner and Jefferey B. Lurner for Petitioners.

No appearance for Respondent.

O'Melveny & Myers, Michael G. Yoder and Amy J. Laurendeau for Real Parties in Interest.

**OPINION**

**MOORE, J.**—As a remedy for the apparent violation of a protective order, the trial court entered several orders prohibiting petitioners and their counsel from contacting certain third party witnesses without court permission. When sought, permission to do so was denied. Because the orders limit the

constitutional rights of petitioners and their counsel without legal justification, the petition is granted.

## I

## FACTS AND PROCEDURAL BACKGROUND

Petitioners Carlos Maggi and James Montagano allege they invested in several limited partnerships involving real estate. Real parties in interest (real parties) David Alkosser and Israel Weinberg were the general partners. Petitioners were apparently made aware of the partnerships by their tax accountant, Ilan Brand, who was also a general or limited partner in real parties' various endeavors. Brand served as tax preparer for the partnerships. In 1994, he asked real parties to buy out his partnership interests. (Real parties characterize Brand's actions as an "attempt to extract monies" from them.) Whatever the circumstances, real parties did buy out Brand, but he continued preparing the partnerships' tax returns. Petitioners sold their interests in the partnerships to real parties in 1997.

Three lawsuits, including the instant case, arose from the conduct of the partnerships. Essentially, petitioners allege real parties failed to provide relevant financial information regarding the partnerships, including a refinance transaction pending at the time petitioners sold their interests to real parties. They allege that had they remained in the partnerships for a short additional period, they would have been entitled to substantial cash disbursements as a result of the refinance. Petitioners' complaint alleged claims for breach of contract, breach of fiduciary duty, and fraud. When the initial action was first filed in January 2000, Brand was also a party, but when the first amended complaint was filed, he was no longer a plaintiff.

In July 2000, the parties entered into a stipulated protective order (Protective Order). Under the terms of the order, any document produced in discovery that was designated as "confidential" by the producing party was not to be disclosed to any third party. Brand was specifically identified as a person to whom confidential documents were not to be disclosed. Sometime thereafter, pursuant to a subpoena, Chase Manhattan Bank produced approximately 6,500 pages of documents.

In July 2001, some of the investors and/or limited partners in real parties' partnerships received an anonymous letter. The letter discussed the circumstances surrounding the lawsuits and referred to two documents, a December

1997 balance sheet and a refinance escrow closing statement relating to one of the partnerships. Real parties believed petitioners' counsel had provided copies of the documents referenced in the anonymous letter to Brand, in violation of the Protective Order. They also asserted that Brand then sent the anonymous letter in an attempt to "stir up" litigation.

Real parties applied for a temporary restraining order (TRO) and an order to show cause why petitioners' counsel should not be disqualified (OSC). Real parties' applications did not contain clear proof that petitioners were responsible for the anonymous letter. After a hearing, the court issued the TRO and OSC. The TRO prohibited petitioners' counsel from discussing the lawsuit or the related actions with any third parties who were current or former investors in the partnerships. Petitioners' counsel were further restrained from accepting representation of any new clients in lawsuits against real parties. Further, petitioners' counsel were required to notify real parties and the court within 24 hours of being contacted by any investor who had received the anonymous letter. The OSC set a hearing on the disqualification motion.

Petitioners' responses to the TRO and OSC averred they knew nothing about the anonymous letter, had not provided any documents to Brand, and were not paying Brand to solicit additional plaintiffs. Brand submitted a declaration stating he was not provided with any information in violation of the Protective Order and was not attempting to solicit clients for petitioners' counsel. He did not address the authorship of the anonymous letter.

At the hearing on the OSC in August 2001, the court acknowledged real parties' accusations lacked hard evidence. Indeed, real parties' counsel acknowledged that Brand had access to the balance sheet prior to the Chase Manhattan document production, and he may also have had access to the escrow closing statement. Thus, assuming Brand was the author of the anonymous letter, he may have obtained the documents in a manner that did not involve violation of the Protective Order.

Ultimately, the court concluded "someone on [petitioners'] side violated the Protective Order." The court denied the disqualification motion, but at real parties' suggestion, decided to continue the TRO. On September 4, 2001, a new order (Restraining Order) was issued. The Restraining Order stated: "IT IS HEREBY ORDERED that Plaintiffs' counsel are restrained from discussing this lawsuit or the [related lawsuits] with any third parties who are current or former investors in any partnership in which [real parties] are or were

general partners without first applying for and receiving the Court's permission. IT IS FURTHER ORDERED that any such application for the Court's permission must be served on Defendants' counsel. [¶] IT IS FURTHER ORDERED that Plaintiffs' counsel are restrained from accepting representation of any new plaintiffs in any lawsuits against any of the Defendants, any corporate general partners of the partnerships in which [real parties] hold or formerly held partnership interests, or any of the partnerships themselves." Additionally, petitioners were ordered to immediately notify real parties and the court if any of the investors contacted them or their counsel.

Several investors did contact petitioners' counsel, and as required by the TRO (and later the Restraining Order) petitioners notified the court and real parties that a number of investors had contacted them. Petitioners applied for permission to contact the investors listed in the notices. Real parties opposed, arguing the investors had no information relevant to the case. At a hearing on September 27, 2001, the trial court ultimately decided that petitioners' counsel could contact the witnesses, but the court-appointed discovery referee had to be present during the telephone calls, and the parties had to agree on areas of questioning that the court would then approve during a subsequent hearing. These orders are also a subject of this petition (the September 27, 2001 order).[1]

Subsequently, the parties agreed on four areas of questioning, but could not reach an agreement on other subjects. In February 2002, petitioners filed a motion for further hearing on the matter. After briefing, a hearing was held in March 2002. The court then denied the entire application to speak with the witnesses, despite its previous order and the parties' agreement on certain areas of questioning. The court's ruling was reflected in an April 23, 2002 order (Discovery Order). In June 2002, petitioners sought relief in this court via a writ of mandate or other appropriate relief. The case was delayed while settlement efforts were undertaken. After such efforts failed, we issued an order directing real parties to show why mandate should not issue.

II

DISCUSSION

■ Petitioners argue the Restraining Order, and by extension, the September 27, 2001 order and the Discovery Order, violate the right of petitioners and

---

[1] In October 2001, petitioners sought writ relief in this court. We denied the writ, concluding relief was premature. (*Maggi et al. v. Superior Court* (Nov. 29, 2001, G029804 [order].) Petitioners' request that we take judicial notice of the exhibits submitted in the 2001 proceeding is denied as unnecessary, as there are no citations to those exhibits in any of the briefs submitted in the instant matter.

their counsel to freedom of speech.[2] Although the parties seem to believe the abuse of discretion standard applies to the court's orders, they are mistaken. The issue of whether the orders run afoul of a constitutional right is purely a question of law, and we therefore consider it de novo. (See *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

The Restraining Order states: "IT IS HEREBY ORDERED that Plaintiffs' counsel are restrained from discussing this lawsuit or the [related lawsuits] with any third parties who are current or former investors in any partnership in which [real parties] are or were general partners without first applying for and receiving the Court's permission. IT IS FURTHER ORDERED that any such application for the Court's permission must be served on Defendants' counsel. [¶] IT IS FURTHER ORDERED that Plaintiffs' counsel are restrained from accepting representation of any new plaintiffs in any lawsuits against any of the Defendants, any corporate general partners of the partnerships in which [real parties] hold or formerly held partnership interests, or any of the partnerships themselves."[3] The September 27, 2001 order limited the manner in which the petitioners might contact the witnesses. The Discovery Order denied permission to speak to the witnesses when leave to do so was sought by the petitioners.

"Congress shall make no law . . . abridging the freedom of speech . . . ." (U.S. Const., 1st Amend.) "Every person may freely speak, write and publish his or her sentiments, on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." (Cal. Const., art. I, § 2, subd. (a).) "The wording of this section is terse and vigorous, and its meaning so plain that construction is not needed. The right of the citizen to freely speak, write, and publish his sentiments is unlimited, but he is responsible at the hands of the law for an abuse of that right. He

---

[2] Real parties argue this issue was never raised below. Petitioners respond they had no warning that the TRO containing the speech restrictions might be continued after the hearing on real parties' disqualification motion, and once it became clear at the hearing that it might, they were not given an opportunity to argue. Given the record and transcript of the hearing, we agree with petitioners. Moreover, we have broad discretion to hear the petition in any event, particularly given the important constitutional issues raised therein. (*Civil Service Employees Ins. Co. v. Superior Court* (1978) 22 Cal.3d 362, 374–375, fn. 6 [149 Cal.Rptr. 360, 584 P.2d 497].)

[3] Real parties argue petitioners have no standing to challenge the provision of the Restraining Order prohibiting their counsel from accepting the representation of new clients in this matter. Orders concerning counsel's conduct or disqualification are routinely challenged in writs or appeals nominally brought by the clients. (See, e.g., *Brooklyn Navy Yard Cogeneration Partners v. Superior Court* (1997) 60 Cal.App.4th 248 [70 Cal.Rptr.2d 419].) Requiring counsel to file a new action to challenge the trial court's decisions would be a waste of time and money for all concerned, and any suggestion that no one has standing to challenge decisions involving counsel is, of course, absurd.

shall have no censor over him to whom he must apply for permission to speak, write, or publish, but he shall be held accountable to the law for what he speaks, what he writes, and what he publishes." (*Dailey v. Superior Court* (1896) 112 Cal. 94, 97 [44 P. 458] [predecessor provision].)

"Orders which restrict or preclude a citizen from speaking in advance are known as 'prior restraints,' and are disfavored and presumptively invalid. Gag orders on trial participants are unconstitutional unless (1) the speech sought to be restrained poses a clear and present danger or serious and imminent threat to a protected competing interest; (2) the order is narrowly tailored to protect that interest; and (3) no less restrictive alternatives are available." (*Hurvitz v. Hoefflin* (2000) 84 Cal.App.4th 1232, 1241 [101 Cal.Rptr.2d 558], fns. omitted.)

■ We need not reach the second or third prong of this test, because the Restraining Order fails to meet the first prong—the speech restrained does not implicate a "protected competing interest." The "protected competing interest" during a trial is the *constitutional* right to a fair trial. (*Hurvitz v. Hoefflin, supra,* 84 Cal.App.4th at pp. 1241–1242.) Here, the interest at issue is the trial court's ability to govern the discovery process and sanction violations of discovery orders. Real parties argue they have the right to be free from abusive discovery designed to disrupt and interfere with their relationships with their investors. While these matters are important, they are not constitutionally protected competing interests analogous to the right to a fair trial. ■ Gag orders are not an appropriate method to protect confidential information from disclosure, no matter how damaging or private that information may be. (*Id.* at p. 1244.) Thus, a gag order is certainly not an appropriate sanction after confidential information has already been disclosed.

Real parties argue the *Hurvitz v. Hoefflin* standard does not apply here. In *Hurvitz,* the gag order applied to information obtained independently and through the discovery process. (*Hurvitz v. Hoefflin, supra,* 84 Cal.App.4th at pp. 1237–1240.) Only the portion of the gag order regarding the materials obtained independently of the discovery process was challenged. (*Id.* at p. 1241.) Thus, real parties argue, since the confidentiality order here pertained to information obtained during discovery, the principles set forth in *Hurvitz* regarding gag orders do not apply. We disagree, because petitioners are not challenging the court's power to order them to keep information obtained through discovery confidential; they are challenging the court's

power to order them not to contact certain people or accept the representation of additional plaintiffs as a *sanction* for allegedly violating a confidentiality order.

Similarly, cases upholding the constitutionality of protective orders that limit discovery are not applicable here. (See, e.g., *Seattle Times Co. v. Rhinehart* (1984) 467 U.S. 20, 28 [81 L.Ed.2d 17, 104 S.Ct. 2199].) Again, petitioners are not challenging a restriction on speech that was part of the Protective Order, but the use of a restriction on speech as a *remedy* for violating the Protective Order. The order at issue is not merely a restriction on discovery, but a restriction on speech: "Plaintiffs' counsel are restrained from discussing this lawsuit . . . with any third parties who are current or former investors in any partnership in which [real parties] are or were general partners without first applying for and receiving the Court's permission." This order prohibits not only formal discovery but also any informal discussion with the investors without obtaining the court's permission. The order further prohibits plaintiffs' counsel from accepting the representation of any new plaintiffs against real parties, which also infringes on the rights of free speech and association without adequate justification.

■ The trial court's conclusion that the Protective Order was violated was not an abuse of discretion, but the remedy it fashioned was inconsistent with the federal and state constitutional guarantees of free speech. ■ We understand the frustration trial courts experience when dealing with litigants it believes are playing fast and loose with discovery rules, attempting to stir up additional litigation, or otherwise ignoring its orders. Other forms of sanctions, however, exist to address abuses of the discovery process and violations of court orders. Absent a "protected competing interest" on a level equivalent to the constitutional guarantee of free speech, orders limiting speech are not appropriate sanctions.

On remand, the court may consider appropriate discovery sanctions for violation of the Protective Order. Such measures may include monetary sanctions, for example, or limiting the depositions of third party investors to certain topics relevant to the instant case. The court may not, however, prohibit petitioners' counsel from speaking to third parties on an informal basis (if the third parties wish to do so), or from taking on the representation of additional clients, subject to applicable ethical rules and standards.

## III

## DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue directing the superior court to vacate its orders of September 4, 2001, September 27, 2001, and April 23, 2002, and issue new and different orders consistent with this opinion. Petitioners shall recover their costs.

Sills, P. J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied July 21, 2004, and the petition of real parties in interest for review by the Supreme Court was denied September 29, 2004. George, C. J., did not participate therein.