MORRIS, Judge.
SP Healthcare Holdings, LLC; ASC Holdings, Inc.; Rodolfo Gari, M.D.; Laurie Gari; Rodolfo Gari Jr. Grantor Retained Annuity Trust; and Lauri Gari Grantor Retained Annuity Trust (the Sellers) seek certiorari review of an order granting a motion to compel compliance with a discovery order filed by Surgery Center Holdings, LLC; Armenia Ambulatory Surgery Center, LLC; Surgery Center Holdings, Inc.; and H.I.G. Middle Markets, LLC (the Buyers). We grant the petition and quash the portion of the order requiring that all discovery be approved by the circuit court.
I. Background
In 2009, H.I.G. Middle Markets entered into negotiations with SP Healthcare Holdings, LLC, and ASC Holdings, Inc., for the purchase of a group of ambulatory surgical centers.[1] H.I.G. Middle Markets created Surgery Center Holdings, LLC; Armenia Ambulatory Surgery Center, LLC; and Surgery Center Holdings, Inc., for the purpose of owning and operating the surgery centers. H.I.G. Middle Markets was not a party to the agreement but negotiated the agreement on behalf of the Buyers’ investors. The purchase agreement, dated December 24, 2009, provided for an initial cash payment of approximately $120,000,000 as well as a potential earn-out payment of up to $10,000,000 based on the surgery centers’ 2010 financial performance. The purchase agreement also provided for the establishment of an escrow account holding funds in the amount of $2,944,000 to cover claims that the Buyers may have for indemnification according to their rights under the purchase agreement.
*89 In December 2010, the Buyers submitted claims for indemnification to the escrow account. These claims, totaling $4,967,521, related to alleged overpayment, billing, coding, and collections issues that occurred prior to the closing date. In July 2011, the Buyers asserted additional claims for indemnification, alleging that the Sellers had misrepresented their accounts receivable by $14,035,081. After applying a multiplier provided for in the purchase agreement, the Buyers claimed a loss of $78,034,772. The Sellers, on the other hand, claimed that they are entitled to the full $10,000,000 earn-out based on the 2010 performance of the surgery centers. The Sellers claimed that the Buyers were misrepresenting that the accounts receivable were overstated in an effort to avoid paying the Sellers the $10,000,000 earn-out and that the Buyers never had the intention to make the $10,000,000 earn-out payment to the Sellers.
As a result of these disputes, the Sellers filed suit against the Buyers and H.I.G. Middle Markets, alleging two counts for fraud, two counts for breach of contract, and one count to adjudicate the Buyers’ claims for indemnification made against the escrow account. The Sellers sought to discover evidence of other similar conduct by H.I.G. Middle Markets and its parent company, H.I.G. Capital, in other business transactions. The Sellers claimed that H.I.G. Middle Markets responded falsely in its interrogatory response that it had not been a party to any other lawsuit; the Sellers had discovered that H.I.G. Middle Markets and its affiliates had been involved in several other lawsuits. Specifically, the Sellers claimed that they learned that an H.I.G. Middle Markets’ affiliate had alleged similar facts in another legal dispute. The Sellers served the Buyers with a notice of intent to serve subpoenas duces tecum without deposition on numerous in-state and out-of-state nonparties which had been acquired by H.I.G. Middle Markets or its affiliates since 2005.
The Buyers filed a counterclaim and third-party complaint for declaratory judgment, breach of contract, and abuse of judicial process. The Buyers named Rodolfo Gari and Laurie Gari and the two trusts as new defendants, claiming that all of the Sellers engaged in a campaign to disparage and discredit H.I.G. Middle Market and H.I.G. Capital. The Buyers objected to the Sellers’ serving the subpoenas duces tecum.
A special magistrate heard the issue of the subpoenas, and the circuit court entered an order ratifying the special magistrate’s rulings on March 8, 2012. With respect to entities located outside of Florida, the order directed the Sellers to “follow all applicable rules and procedures for issuance and service of out-of-state subpoenas, to the extent required by the target states.” The circuit court provided that the Sellers “may issue the subpoenas identified” in the notice. However, the circuit court granted the Buyers’ objections “with respect to the any proposed subpoenas to entities [located] outside the United States.” The circuit court entered a thirty-day stay of the order from the date of the hearing (February 27, 2012) so that the Buyers could “seek relief from the appellate court.” The Buyers sought cer-tiorari review in this court in case 2D12-1772, and this court granted a further stay pending review.
The Sellers contend that after the expiration of the circuit court’s stay and before the entry of the stay pending review in this court, the Sellers “resumed their informal investigation of the facts surrounding their claim.” This prompted the Buyers to file on April 9, 2012, a motion to compel compliance with the court order and for sanctions for litigation misconduct. *90 The Buyers claimed that the Sellers circumvented the discovery order by issuing numerous ex parte discovery requests and mass emails to hundreds of recipients through professional networking websites in Europe and the United States. The Buyers claimed that the Sellers misrepresented to these recipients that the Sellers were in the process of having Florida subpoenas served for the purpose of gathering this information if the recipients were not willing to provide the information. The Buyers claimed that the Sellers were “requesting the same information and documents in the [s]ubpoenas [that] were subject to” the court’s March 8, 2012, order. The Buyers argued that the Sellers were trying to circumvent the March 8, 2012, order and were attempting “to disparage the reputation of H.I.G. Capital and to unlawfully gain leverage in this case.”
The circuit court held a hearing on May 1. 2012, after which it entered an order granting the Buyers’ motion. The written order entered on June 21, 2012, provides in relevant part:
2.As determined by the Court on May 1, 2012, [the Sellers’] use of Florida subpoenas to obtain discovery from third parties in jurisdiction [sic] outside of Florida and use of other informal discovery practices to obtain that discovery without notice were contrary to the intent of the Court’s March 8, 2012[,] Order Ratifying Recommendation of Special Magistrate.
3.Pursuant to Florida Rule of Civil Procedure 1.280(c), the Court is limiting discovery in this case by requiring that all discovery requests to third parties be conducted by formal compulsory process through the court system.
The order also provided that it was subject to the stay entered by this court in 2D12-1772 and that after the resolution of 2D12-1772, “the parties may seek rehearing or clarification of this [o]rder.”[2] The court also reserved ruling on the Buyers’ request for sanctions. The Buyers’ petition for writ of certiorari filed in case 2D12-1772 was later denied by this court on October 17, 2012.
II. Analysis
The Sellers now seek certiorari review of the June 21, 2012, order granting the Buyers’ motion to compel compliance. In their petition for writ of certiorari, the Sellers claim that the circuit court departed from the essential requirements of the law in precluding the Sellers from communicating with any third party about the facts of this case without first proceeding through the court’s formal discovery process. The Sellers contend that the order infringes on their right to free speech and their right to critical work product and that the circuit court was without authority to enter the order. The Buyers respond that the June 21, 2012, order only limits compulsory disclosure and not informal fact-finding generally.[3]
*91 Certiorari review is proper here. See Zirkelbach Constr. v. Rajan, 93 So.3d 1124, 1127 (Fla. 2d DCA 2012) (“ ‘[R]eview by certiorari is appropriate when a discovery order departs from the essential requirements of law, causing material injury to a petitioner throughout the remainder of the proceedings below and effectively leaving no adequate remedy on appeal.’ ” (alteration in original) (quoting Allstate Ins. v. Langston, 655 So.2d 91, 94 (Fla.1995)); Rodriguez v. Feinstein, 734 So.2d 1162, 1163 (Fla. 3d DCA 1999) (holding that certiorari review is proper when an order implicates a violation of the parties’ constitutional rights and the harm cannot be corrected on plenary appeal).
We first look to the circuit court’s statements made at the hearing on May 1, 2012. After hearing argument from the Buyers and the Sellers, the following discussion occurred:
COURT: Generally speaking, yes, of course, you can do informal fact-finding, but my subpoena is not informal, you know, because once I issue discovery, I issue discovery.
So from today forward I’m going to have to enter some type of status quo order that basically requires discovery to run through the court system to obtain discovery from these various entities because we just need to make it clear so everybody’s kind of playing all discovery through the court system.
Yes, I would — my—I intended the order to be through the process of the out-of-state jurisdiction, obtain the subpoena through that, and not send a letter to an entity with the subpoena attached. I intended it to be — because my subpoenas do not or my issue — things I issue have no force in another jurisdiction, so I don’t — I dislike having an order of the Court suggest that it can do things that it can’t do. That’s just my personal view. So I try to be specific on that from that standpoint.
So I’m going to do this. I’m just going to order that on this — I guess the question is, is there a need to have just a generic status quo order so that no discover — all discovery, any investigation of discovery, is conducted through the court processes?
[SELLERS’ COUNSEL]: Judge, do I understand — with respect to the subpoenas, I understand your ruling. I hear what you’re saying ... but with respect to [my] going on the Internet looking for cases, my clientfs] calling people he knows asking questions, one, there was never any request to limit that behavior, I don’t know what the authority would be for it, and that’s not in your order.
COURT: The authority — I mean, they have — the authority — since I — being in business court, I get these periodically. There is some case law authority that allows the Court to order what’s called a status quo or status quo injunction/order that kind of gets everything— stops parties from escalating in effect issues beyond where — and I don’t like to do it where ... there’s legitimate need to investigate.
I do see the need to do it where there’s suggestions of the need — you know, where there’s going to be some type of suggestion that ... besmirches a party’s reputation with regard to the— you know, just making the request and suggesting something that doesn’t need to be suggested. So it’s a balance, to answer the question.
*92 Clearly the case law doesn’t favor the status quo orders, but that’s why I’m asking because I can just order everybody to take this through the court system?
[[Image here]]
The thing I’m trying to limit — or “balance” is a better word, I guess, to balance your right to obtain the information to prove potentially your fraud count versus their right not to have their reputation kind of sullied....
I understand you have the right to conduct discovery. I get that. I think [Buyers’ counsel] gets that. I appreciate the fact that they want to minimize the fallout from that type of discovery.
[[Image here]]
[SELLERS’ COUNSEL]: I don’t know from your ruling if I can go on the internet and do research about H.I.G.
COURT: You can research your heart away.... I’m trying to limit affirmative statements being placed out there.... And so I’m trying to limit the affirmative thing, not the receipt of information.
[[Image here]]
So I’m trying to limit it so that you can — I’m letting you subpoena all these people. It’s not that — it’s not that I’m not allowing you to use the court process to directly subpoena all these entities to obtain your information_I’m just requiring you to obtain it through the formal court process so that we’re limiting the fallout. It’s just compulsory process through the court system, and that’s the way we’re going to do it.
The circuit court’s statements indicate that the court was concerned with the competing interests of the Buyers and the Sellers, but the statements do not unequivocally demonstrate whether the circuit court intended for informal investigations in this case to be court-approved or whether the circuit court intended that its ruling apply only to requests for documents. The Buyers claim that the order only relates to formal discovery or compulsory disclosure requested by a party and not to informal investigation or fact-finding. But the Sellers’ contend that the Buyers have taken a contrary position below, i.e., that the Sellers must go through the court process in order to informally communicate with nonparties. We conclude that the circuit court’s written order can be interpreted to prevent the Sellers from seeking information, even informally, from any third parties without first obtaining permission from the court.
As its basis for the order, the court cited Florida Rule of Civil Procedure 1.280(c), which provides in relevant part:
(c) Protective Orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense that justice requires, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (8) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; and (8) that the parties si *93 multaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court....
The circuit court’s citation to rule 1.280(c) indicates that the circuit court’s order serves as a type of protective order. Although the Sellers do not cite rule 1.280(c), they seem to suggest that the law regarding unconstitutional restraints on free speech operates as a limitation on the circuit court’s authority under rule 1.280(c). See, e.g., Forrest v. Citi Residential Lending, 73 So.3d 269 (Fla. 2d DCA 2011) (recognizing the difference between unconstitutional prior restraints on free speech and orders entered within the circuit court’s discretion to protect parties and prevent the abuse of the discovery process).
“ ‘A trial court possesses broad discretion in overseeing discovery[] and protecting the parties that come before it.’ ” Rojas v. Ryder Truck Rental, 641 So.2d 855, 857 (Fla.1994) (quoting Rojas v. Ryder Truck Rental, 625 So.2d 106, 107 (Fla. 3d DCA 1993)). Under the parameters of rule 1.280(c), the circuit court may fashion discovery orders that protect a party from abuses of the discovery process. We have no doubt that the circuit court had the authority to protect the Buyers from the Sellers’ alleged conduct in regard to the numerous subpoenas that were at issue in the March 8, 2012, order and that were sought to be served on various out-of-state entities. The issue of those subpoenas had previously been before the court, and the circuit court acted within its discretion in finding that a protective order was necessary in regard to that matter. But to the extent that the order broadly requires all informal fact-finding to be approved by the court, the circuit court exceeded its authority for two reasons.
First, the order severely impedes the Sellers’ ability to prepare their case for trial. Neither party has cited, nor have we been able to find, any Florida decisions directly on point. But we rely on two out-of-state cases as persuasive authority. In International Business Machines v. Edelstein, 526 F.2d 37, 41 (2d Cir.1975), the circuit court reviewed an order that provided that when the parties interview a ■witness in the absence of opposing counsel, the parties must hire a court reporter to transcribe the interview so that it could be reviewed by the court. On appeal, the circuit court noted the crucial role an interview may play in a party’s preparation of the case:
A lawyer talks to a witness to ascertain what, if any, information the witness may have relevant to his theory of the case, and to explore the witness’ knowledge, memory and opinion — frequently in light of information counsel may have developed from other sources. This is part of an attorney’s so-called work product. It is the common experience of counsel at the trial bar that a potential witness, upon reflection, will often change, modify or expand upon his original statement and that a second or third interview will be productive of greater accuracy.
Id. The court opined that the order “unduly infringed upon counsels’ ability to prepare their case for trial” and did a disservice to the court by requiring the court’s scrutiny over “the process by which counsel researches, develops and integrates the case which he ultimately presents.” Id. at 42. The court noted that courts cannot interfere “with the preparation of a client’s defense by restricting his counsel’s ability to freely interview witnesses willing to speak with him.” Id. at 43.
We believe that the rationale behind the Edelstein decision is applicable here. The *94 circuit court’s order in this case can be read to require the court’s permission before informal investigation may be conducted. This hinders the Sellers’ counsel’s ability to prepare their case for trial and places an unnecessary burden on the circuit court to oversee informal fact-finding. Beyond the issue of the subpoenas discussed at the March 8, 2012, hearing, the Buyers did not establish, and the circuit court did not find, that there was a need to limit the Sellers’ ability to engage in other informal discovery.
Second, the order infringes on the Sellers’ right to free speech. In Maggi v. Superior Court of Orange County, 119 Cal.App.4th 1218, 15 Cal.Rptr.3d 161, 166-67 (2004), the Fourth District Court of Appeal of California held that the trial court erred in restricting a party’s right to talk to witnesses on an informal basis. The parties had entered into a stipulated protective order that prevented them from disclosing to third parties any confidential document produced in discovery. Id. at 163. When confidential documents were disclosed to nonparty investors of the defendants via an anonymous letter, the court issued a restraining order preventing the plaintiffs’ from discussing the lawsuit or related lawsuits with the nonparty investors without first receiving the court’s permission. Id. at 163-64. The court later denied the plaintiffs’ request when they sought permission to discuss the case with certain nonparty investors who had contacted them. Id. at 164-65.
The appellate court held that the order was a gag order that did not pass constitutional muster because the restrained speech did not pose a threat to a protected competing interest. Id. at 166. The court held that the right to a fair trial is a constitutionally protected competing interest that is not outweighed by the opposing party’s right to be free from abusive discovery. The court found that the order was “not merely a restriction on discovery, but a restriction on speech” because it prohibited “any informal discussion with the investors without obtaining the court’s permission.”[4] Id. at 167. The court held that the order was an improper sanction for the plaintiffs’ allegedly violating a discovery order and that other forms of sanctions were available to remedy the abuse of the discovery process. Id.
As in Maggi, the order here infringes on the Sellers’ right to free speech because it prohibits any informal investigation of the case without the Sellers’ first seeking permission from the court. The order is not simply an order regulating discovery that had become an issue in the case; it broadly restricted the Sellers’ future speech. The Sellers’ actions in violating the earlier discovery order do not warrant the circuit court broadly restricting the Sellers’ ability to informally investigate their case by contacting third parties.
III. Conclusion
In sum, the circuit court exceeded its authority to the extent that its order can be read to require that all investigation regarding third parties must go through the court system. The circuit court was attempting to protect the Buyers from embarrassment or disparagement based on the Sellers’ misconduct regarding particular subpoenas, but the circuit court could have fashioned an order protecting the Buyers from that misconduct without broadly restricting the Sellers’ right to prepare for trial and their right to free *95 speech. We grant the Sellers’ petition and quash that portion of the order.
Petition granted; order quashed in part.
NORTHCUTT, J., and GALLEN, THOMAS M., Associate Senior Judge, Concur.

. The facts regarding the relationship and dispute between the parties are gleaned from the complaint and other filings in the circuit court.

. The Sellers indicated their intention to seek clarification or rehearing, but it is not clear if the issue was ever brought back before the circuit court in the form of a motion.

. The Buyers also respond that the issue is not preserved because it was never raised below and that the Sellers are attempting to challenge the March 8, 2012, order when they failed to timely seek review of that order. These arguments are without merit because the Sellers alerted the circuit court to the issues raised herein; in a letter to the circuit court, the Sellers opposed the Buyers’ proposed order on the bases that it misstates the circuit court’s rulings and may "impinge upon [the Sellers’] free speech rights and the obligations of [the Sellers'] counsel.” Also, the Sellers do not challenge the March 8, 2012, order, which simply directs how the Sellers shall proceed in issuing subpoenas to certain out-of-state third parties. Rather, the Sellers challenge language specific to the June 21, 2012, order, which the Sellers claim *91 broadly restricts their right to interview or contact third parties beyond the scope of the subpoenas that were the subject of the March 8, 2012, order.

. The orders also prohibited the plaintiffs’ counsel from representing any of the third-party investors. The court held that this restriction also infringed on "the rights of free speech and association without adequate justification.” 15 Cal.Rptr.3d at 167.