Filed 4/20/16  Zadovsky, as Trustee v. Wells Fargo Bank CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VIKKI ZADOVSKY, as Trustee, etc.,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>     Defendant and Appellant. | A140939<br><br>(Marin County<br>Super. Ct. No. CIV140137) |

Defendant Wells Fargo Bank, N.A. (Wells Fargo) appeals from a temporary restraining order in which the trial court awarded over $14,000 in attorney fees and costs to the plaintiff, Vikki Zadovsky.  The court purportedly awarded the fees and costs to Zadovsky as a prevailing borrower who succeeded in obtaining injunctive relief under the Homeowner Bill of Rights (HBOR) (Civ. Code,[1] §§ 2920.5, 2923.4, 2923.4–.7, 2924, 2924.9–.12, 2924.15, 2924.17–.20).

Because Zadovsky failed to establish that the residential property at issue was owner-occupied at the time Wells Fargo allegedly violated the HBOR, she is ineligible for relief under the HBOR.  (§ 2924.15, subd. (a).)  The temporary restraining order was therefore granted in error and the associated attorney fee and cost award must be reversed.

---

[1]All further statutory references are to the Civil Code unless otherwise specified.

## FACTUAL AND PROCEDURAL HISTORY

In January 2007, Wells Fargo's predecessor, World Savings Bank, FSB, loaned $960,000 to Lena Polizzi (the loan). The loan was secured by a deed of trust recorded against Polizzi's residence in San Rafael (the property). Polizzi died in December 2010.

Polizzi left her entire estate to the Lena Polizzi Revocable Living Trust—2006 (the trust). Zadovsky became the trustee of the trust upon Polizzi's death.

After Polizzi's death, Wells Fargo continued to receive payments on the loan until June 2011. In November 2011, the Marin County Superior Court determined that Polizzi's interest in the property was an asset of the trust.

More than two years after payments on the loan had ceased, Cal-Western Reconveyance LLC (Cal-Western), as trustee under the deed of trust, recorded a notice of default. In December 2013, Cal-Western recorded a notice of trustee's sale with a scheduled sale date of January 15, 2014.

On January 10, 2014, five days before the scheduled date of the trustee's sale, Zadovsky's attorney faxed a letter to the "Wells Fargo Bank Foreclosure Dept." and sent an email to Cal-Western notifying them that she would be moving *ex parte* for a temporary restraining order to enjoin the trustee's sale. The letter does not indicate that Zadovsky would seek to recover her attorney fees in connection with the temporary restraining order.

Two days before the scheduled trustee's sale, Zadovsky filed a complaint against Wells Fargo and Cal-Western. The complaint contains a cause of action for declaratory relief, seeks a temporary restraining order, and requests attorney fees and costs under section 2924.12, subdivision (i). Zadovsky alleges in the complaint that she first notified Wells Fargo's predecessor in January 2011 that Polizzi had died and that she had power of attorney to act on Polizzi's behalf. She further alleges that she had contacted Wells Fargo or its predecessor on at least 12 separate occasions in an effort to discuss a loan modification in light of the fact that the property was worth less than the amount owed on the loan. According to Zadovsky, Wells Fargo or its predecessor consistently took the position that it would not communicate with her about the loan because she was not the

2

borrower or someone authorized by the borrower to deal with the lender. Zadovsky alleges that she and her attorneys provided Wells Fargo with documentation establishing her authorization to deal with Wells Fargo with respect to the loan. Nevertheless, according to Zadovsky, Wells Fargo persisted in its refusal to deal with her in connection with the loan.

As set forth in the complaint, Polizzi was a long-time friend and neighbor of Zadovsky and her family. Polizzi was a childless widow when she died. Zadovsky described Polizzi's property as being in a state of disrepair at the time of Polizzi's death. Zadovksy claims that she did not intend to sell the property. Instead, she sought a loan modification from Wells Fargo in order to make necessary repairs with the intention of living at the property with her family. The clear import of the complaint is that Zadovsky was not living at the property at the time the complaint was filed. Her intent as expressed in the complaint was to live there at some point in the future. Further, there is no indication in the complaint that she lived at the property at any time following Polizzi's death.

On the day before the scheduled trustee's sale, Zadovsky filed an *ex parte* application for a temporary restraining order to enjoin the sale. In a memorandum accompanying the application, Zadovsky argued that she had attempted to communicate with Wells Fargo for three years in an effort to discuss a modification of the loan. She contended that Wells Fargo had violated the HBOR in various respects, including by failing to communicate with her or her authorized representatives concerning a loan modification (§ 2923.55) and by serving a false declaration of compliance stating that the lender had exercised due diligence in contacting the borrower to explore options to avoid foreclosure (§§ 2923.55, subd. (c), 2924.17). The memorandum confirms that Zadovksy intended to improve the property so that her family could live at the property in the future. A declaration submitted with the temporary restraining order application reflected efforts by Zadovsky's attorneys to contact Wells Fargo and Cal-Western in advance of the trustee's sale. Zadovsky's attorneys sought fees and costs totaling $14,219 in connection with the temporary restraining order.

The trial court issued the requested temporary restraining order on January 14, 2014. None of the defendants was present at the *ex parte* hearing at which the court considered the application for a temporary restraining order. The temporary restraining order enjoined the trustee's sale, acknowledged that Zadovsky was the person authorized to deal with defendants in all respects with respect to the property, ordered defendants to establish a single point of contact with Zadovksy and her authorized representatives for purposes of discussing a loan modification, and ordered defendants to show cause why a preliminary injunction should not issue. As relevant here, the temporary restraining order also "ordered [defendants] to pay [Zadovksy] her attorney's fees and costs incurred herein [in] the amount of $14,219.00, together with whatever additional fees and costs are incurred in connection with the further proceedings in connection with the Order to Show Cause."

Zadovksy first served her complaint and the temporary restraining order on Wells Fargo on the day after the temporary restraining order was issued. Zadovksy did not serve the temporary restraining order application and the supporting materials on Wells Fargo for another 14 days. Wells Fargo filed a timely notice of appeal from the temporary restraining order.[2]

After several continuances, the court ultimately heard the request for a preliminary injunction in April 2014. The court denied the preliminary injunction, finding that Zadovsky was not entitled to the protections of the HBOR because the property was not owner-occupied.

The property was sold at a public auction in May 2014 to Zadovsky's family trust.[3] Zadovsky filed a notice with this court reflecting that she dismissed the trial court action in July 2014 following the sale of the property.

---

[2]Cal-Western is not a party to this appeal. Cal-Western filed a declaration of non-monetary status in the trial court and has no further involvement in this action. (See § 2924*l*, subd. (d).)

[3]At Wells Fargo's request, we take judicial notice of the trustee's deed upon sale reflecting the sale of the property to the Simon and Vikki Zadovksy Family Trust.

4

**1.    *Appealability and standard of review***

A temporary restraining order, as an interim provisional order granting injunctive relief, is immediately appealable under Code of Civil Procedure section 904.1, subdivision (a)(6).  (*In re Marriage of Nicholas* (2010) 186 Cal.App.4th 1566, 1576; *McLellan v. McLellan* (1972) 23 Cal.App.3d 343, 357.)  An order awarding attorney fees is separately appealable if made after an appealable order or judgment (Code Civ. Proc., § 904.1, subd. (a)(2); *DeZerega v. Meggs* (2000) 83 Cal.App.4th 28, 43), but in this case the order awarding attorney fees and costs was incorporated in the appealable temporary restraining order.

We generally review an order granting a temporary restraining order for abuse of discretion.  (See *Biosense Webster, Inc. v. Superior Court* (2006) 135 Cal.App.4th 827, 834.)  However, we apply de novo review if the propriety of the issuance of the temporary restraining order turns upon a pure question of law, such as the interpretation of a statute.  (*Maggi v. Superior Court* (2004) 119 Cal.App.4th 1218, 1224.)

**2.    *Mootness***

During the pendency of this appeal, Zadovsky notified this court that the property had been sold, that her family trust succeeded in purchasing the property, and that she had dismissed her action in the trial court.  She urged the court to dismiss the appeal as moot.

Ordinarily, "[a]n appeal from an order denying a temporary restraining order or preliminary injunction will not be entertained after the act sought to be enjoined has been performed."  (*Ragland v. U.S. Bank National Assn., supra,* 209 Cal.App.4th at p. 208.)  Here, the sale of the property rendered the appeal moot as to any injunctive relief contained in the temporary restraining order.  In addition, the temporary restraining order terminated automatically when the preliminary injunction was denied.  (*Landmark*

---

(Evid. Code, §§ 452, subd. (c), 459; *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 194.)

*Holding Group, Inc. v. Superior Court* (1987) 193 Cal.App.3d 525, 529.) Accordingly, we agree with Zadovksy that the appeal is moot insofar as Wells Fargo challenges the injunctive relief component of the temporary restraining order, such as orders enjoining the trustee's sale and directing Wells Fargo to deal directly with Zadovsky.

We reach a different conclusion with respect to the attorney fee and cost award. The award remains in force and was unaffected by the order denying the preliminary injunction, which did not vacate or even mention the earlier attorney fee and cost award. The award is enforceable under the Enforcement of Judgments Law (Code Civ. Proc., § 680.010 et seq.). (Cf. *Newland v. Superior Court* (1995) 40 Cal.App.4th 608, 615 [monetary orders have force and effect of money judgment and are immediately enforceable].)

Zadovsky suggests the appeal of the fee award is moot because she has no current plan to enforce it. However, just because she does not currently intend to enforce the judgment does not preclude her from changing her mind at any time. Her current plan not to enforce the judgment is far too vague and uncertain a statement to constitute a waiver of her right to do so at some future point in time. Accordingly, the attorney fee and cost award remains an enforceable judgment. The appeal as to the fee award is not moot.

**3.     *The HBOR statutory scheme***

The HBOR, which went into effect in January 2013, "was enacted 'to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure.' [Citation.] Among other things, HBOR prohibits 'dual tracking,' which occurs when a bank forecloses on a loan while negotiating with the borrower to avoid foreclosure." (*Valbuena v. Ocwen Loan Servicing, LLC* (2015) 237 Cal.App.4th 1267, 1272.) The HBOR provides for injunctive relief to remedy statutory violations that occur prior to foreclosure (§ 2924.12, subd. (a)), and monetary

6

damages when the borrower seeks relief for statutory violations after the foreclosure sale has occurred.  (§ 2924.12, subd. (b).)

Section 2924.12, subdivision (i) provides that "[a] court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section.  A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower *obtained injunctive relief* or was awarded damages pursuant to this section." (Italics added.)

**4.      *Owner-occupied residence as prerequisite to relief under the HBOR***

On appeal, Wells Fargo argues that the plain language of the statute authorizing an award of attorney fees and costs for a borrower who has obtained injunctive relief under the HBOR (§ 2924.12, subd. (i)) only applies to a borrower who has secured *permanent* injunctive relief rather than *provisional* relief, such as a temporary restraining order or a preliminary injunction.[4]  It also argues that interpreting the statute to authorize an award of prejudgment attorney fees and costs would violate a federal law that prohibits prejudgment attachments against national banks (see 12 U.S.C. § 91), and it contends that

---

[4]In a case decided after the briefing in this appeal was complete, the Court of Appeal for the Third Appellate District held that the term "injunctive relief" as used in section 2924.12, subdivision (i) "plainly incorporates both preliminary and permanent injunctive relief." (*Monterossa v. Superior Court* (2015) 237 Cal.App.4th 747, 753.) Aside from its reliance on the plain language of the statute, the court reasoned that in many cases the best that a borrower "can hope to achieve is a preliminary injunction" because the lender may respond to a preliminary injunction by correcting the violation. (*Id.* at p. 754.)  In such a case, the borrower has effectively prevailed by compelling compliance with the HBOR even though the lender's compliance would moot the request for permanent injunctive relief.  The court concluded the Legislature "must have intended to authorize an award of attorney fees and costs when a trial court issues a preliminary injunction . . . ." (*Ibid.*)  The court did not address whether a temporary restraining order would likewise be considered "injunctive relief" under section 2924.12, subdivision (i). However, in a recent opinion, a federal district court extended the reasoning of *Monterossa* to a case involving a temporary restraining order and concluded the borrower had obtained "injunctive relief" entitling him to recover his attorney fees and costs incurred in seeking the temporary restraining order. (*Lac v. Nationstar Mortgage LLC* (E.D. Cal., March 28, 2016, Civ. A. No. 2:15-cv-00523-KJM-AC) 2016 U.S. Dist. LEXIS 40633 at p. *10.)

7

awarding attorney fees and costs to a plaintiff who has merely obtained a temporary restraining order—which can be secured *ex parte* without an adversarial proceeding—would violate the defendant's due process rights and render the statute unconstitutional.

It is unnecessary to delve into a constitutional analysis, a review of federal law governing national banks, or even the question of whether, as a matter of statutory interpretation, the Legislature intended to allow a borrower to recover attorney fees and costs under the HBOR when the borrower obtains provisional relief in the form of a temporary restraining order or preliminary injunction.  (See *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1357 [" '[P]rudential rule of judicial restraint counsels against rendering a decision on constitutional grounds if a statutory basis for resolution exists.' "].)  Instead, as we explain, reversal is compelled by the fact that Zadovsky is ineligible for relief under the HBOR because the property was not an owner-occupied residence at the time Wells Fargo allegedly violated the HBOR.

The HBOR authorizes a "borrower" to seek injunctive relief to enjoin a material violation of specified provisions of the HBOR before a trustee's deed upon sale has been recorded.  (§ 2924.12, subd. (a)(1).)  For purposes of our analysis, we will assume without deciding that Zadovsky qualifies as a "borrower" under the HBOR in her capacity as trustee of the trust that assumed the loan at issue.  (Cf. § 2920.5, subd. (c)(1) [defining borrower as a natural person who is a mortgagor or trustor and who qualifies for a foreclosure prevention alternative program].)

As set forth in section 2924.15, subdivision (a), enumerated provisions of the HBOR apply only to first mortgages or deeds of trust secured by "owner-occupied" residences containing fewer than five dwelling units.[5]  "Owner-occupied" is defined to mean "that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes."  (§ 2924.15, subd. (a).)

---

[5]The statutes enumerated in section 2924.15, subdivision (a) include sections 2924, subdivision (a)(5), 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.18.

The language of the statute is clear and unambiguous. A trustee or other mortgage servicer has no obligation to comply with certain designated provisions of the HBOR when the property securing the mortgage is not the principal residence of the borrower at the time foreclosure is being pursued. Among other things, a trustee or other mortgage servicer in such a case is not required to comply with section 2923.55, which generally requires the trustee or other mortgage servicer to contact the borrower and explore options to avoid foreclosure. (See §§ 2923.55, subd. (c), 2924.15, subd. (a).) Because the designated provisions of the HBOR do not apply unless the residence securing the mortgage is "owner-occupied," a borrower is ineligible for injunctive relief or damages under the HBOR for a violation of those provisions unless the borrower uses the property securing the mortgage as the borrower's principal residence.

In this case, no evidence was presented at the time of the temporary restraining order to establish that Zadovksy used the property as her primary residence. Neither the declaration filed by Zadovsky nor the declaration filed by her attorney mentioned whether the property served as Zadovksy's residence or was even occupied at the time. Indeed, to the extent there was any indication about the property's use, the materials presented to the trial court suggested the property was not owner-occupied. The letter Zadovksy's attorney sent to Wells Fargo before seeking the temporary restraining order stated that Zadovsky hoped to refinance the loan so that her family could eventually move into the residence after making necessary repairs. The unverified complaint indicated that the property was in poor repair and required renovations before Zadovsky and her family could use it as a residence at some future time. Thus, the application for a temporary restraining order did not contain facts sufficient to establish that the property securing the loan was owner-occupied within the meaning of section 2924.15, subdivision (a).

Zadovsky's complaint sought injunctive relief to address alleged violations of the HBOR under sections 2923.55, 2924.17, and 2323.7. She alleged that defendants had failed to exercise due diligence in communicating with her or her representatives concerning her request for a loan modification (§ 2923.55), that they had recorded a false

9

declaration of compliance (§§ 2923.55, subd. (c), 2924.17)), that they recorded a declaration of compliance without a statement under penalty of perjury (§ 2923.55, subd. (c)) and that they failed to establish a single point of contact to deal with Zadovsky (§ 2923.7). Two of the HBOR provisions relied upon by Zadovsky—sections 2923.55 and 2923.7—are specifically mentioned in section 2924.15, subdivision (a) as applicable only to mortgages secured by owner-occupied residences. Although the third provision of the HBOR relied upon by Zadovsky—section 2924.17—is not specifically enumerated in section 2924.15, subdivision (a), the alleged section 2924.17 violation for recording a false declaration rests upon an underlying violation of section 2923.55, which is specifically mentioned in section 2924.15, subdivision (a). Because there can be no violation of section 2923.55 unless the property is owner-occupied, there can likewise be no violation of section 2924.17 in such a case when it is premised on a failure to comply with section 2923.55. Consequently, because the property was not owner-occupied, Zadovsky is not eligible for injunctive relief to remedy the alleged violations of the HBOR.

While a temporary restraining order may be granted without the full evidentiary hearing that is afforded before the issuance of a preliminary injunction, it is still the moving party's obligation to set forth sufficient evidence establishing both the threat of irreparable harm as well as the legal basis for relief that would justify maintaining the status quo pending a full hearing. (See *Landmark Holding Group, Inc. v. Superior Court, supra,* 193 Cal.App.3d at p. 528.) In this case, Zadovksy failed to set forth any evidence that the property was her primary residence. She therefore failed to establish any legal basis for injunctive or other relief under the HBOR. Under the circumstances, it was error to grant the requested temporary restraining order, even if Zadovsky could otherwise show that she would have been irreparably harmed unless it were granted.

Because we conclude that the temporary restraining order was granted in error, Zadovksy cannot be considered a "prevailing borrower" under section 2924.12, subdivision (i). As a result, the attorney fee and cost award must be reversed. In light of

our conclusion, it is unnecessary to address any of the other grounds offered by Wells Fargo to overturn the attorney fee and cost award.

## DISPOSITION

The January 14, 2014 order awarding attorney fees and costs to Zadovsky is reversed. Each party shall bear its own costs on appeal.

11

                                                               _____

                                                               McGuiness, P.J.

We concur:


_____
Siggins, J.


_____
Jenkins, J.